(No. 13300.—Judgment affirmed.)

THE PEOPLE *ex rel.* John G. Gamber, State Fire Marshal, Appellant, *vs.* SAMUEL SHOLEM, Appellee.

*Opinion filed June 16, 1920—Rehearing denied October 19, 1920.*

1. CONSTITUTIONAL LAW—*what authority may be delegated by the legislature.* The power to make a law cannot be delegated by the legislature but it may confer authority and discretion as to the execution of a law which it has made, which authority is to be exercised under and in pursuance of the law.

2. SAME—*legislature cannot delegate arbitrary power.* The purpose of constitutional provisions is to protect every citizen in his personal and property rights against the 'arbitrary action of any person or authority, and a statute which subjects any person's rights to the discretion of an officer, without any rules or provisions in the law to control the officer, violates such constitutional provisions.

3. SAME—*section 9 of the act creating office of State fire marshal is unconstitutional.* Section 9 of the act of 1909 creating the office of State fire marshal (Hurd's Stat. 1917, p. 2799,) and authorizing that officer to recover penalties for failure to obey his orders relative to the maintenance of buildings delegates arbitrary power and is unconstitutional, in that it lays down no rule by which the fire marshal is to determine when or why a building is especially liable to fire but leaves it to his discretion to determine when a building is so liable "for any cause." (*Arms* v. *Ayer,* 192 Ill. 601, and *Block* v. *City of Chicago,* 239 id. 251, distinguished.)

4. SAME—*act of 1909, concerning State fire marshal, construed.* The act of 1909, concerning the State fire marshal, does not give the owner of a building the right to a hearing in court as to whether he has violated the act but only as to whether he has complied with the fire marshal's order, however arbitrary it may be.

CARTWRIGHT, C. J., and CARTER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Edgar county; the Hon. JOHN H. MARSHALL, Judge, presiding.

WILBER H. HICKMAN, State's Attorney, for appellant.

SHEPHERD, TROGDON & DOLE, and FRANK T. O'HAIR, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This action was brought by the appellant, John G. Gamber, State fire marshal, to recover penalties from the appellee for not complying with an order issued under section 9 of an act entitled "An act creating the office of State fire marshal, prescribing his duties and providing for his compensation and for the maintenance of his office," approved June 15, 1909. (Hurd's Stat. 1917, p. 2799.) Gamber inspected the premises of appellee on July 21, 1919, and thereafter served upon him the following notice signed by him:

"An inspection of the following property, namely, a one-story frame building located on east side of public square, Paris, Illinois, was made by me this day in my official capacity, and I find by this that the building, by reason of age and want of proper repair, is in a dilapidated condition and is especially liable to fire, and is so situated as to endanger other buildings and property and so occupied that fire would endanger persons and property therein. Therefore, pursuant to the authority vested in me by virtue of section 9 of an act entitled 'An act creating the office of the State fire marshal, prescribing his duties and providing for his compensation and for the maintenance of his office,' as approved June 15, 1909, of the statutes of Illinois, you are hereby ordered to remove or remedy the hazardous conditions as outlined above on or before the 21st day of September, 1919, in the following manner, as set forth in letter hereto attached, and you are advised to in nowise omit complying therewith under penalty of the State law."

The action was begun at the February term, 1920, of the circuit court of Edgar county. The declaration consists of three counts. The first avers the ownership of certain property located in the city of Paris, Illinois, to be in the appellee, and avers that he permitted the same, by reason of old age and depreciation, to become out of repair and in a dangerous condition and especially liable to fire; that the building in question was occupied for the purpose of

a shoe store; that the appellee, after the service of said notice, continued to permit the building to stand in such condition that by reason thereof an action accrued to the People of the State of Illinois, by virtue of said statute, in the sum of $7150, which the appellee has refused to pay. The second count consists of approximately the same allegations, with the exception that it alleges that the cause of action accrued by reason of maintaining the building in a dangerous condition but contains no averment that the liability of the appellee accrued by reason of his failure to obey the order of the fire marshal. The third count is, in substance, similar to the first count, with the addition that the notice served on appellee is set out *in hæc verba.* Appellee filed a general and special demurrer to the declaration, alleging that section 9 of the act is unconstitutional and demurring to the declaration on various other grounds. The demurrer was sustained, and appellant abiding by the declaration, judgment was entered against him in bar, and the cause comes here on appeal from that judgment.

Numerous grounds for demurrer were assigned in the general and special demurrer filed by appellee. However, under the view we take concerning the constitutionality of section 9, it does not become necessary to consider any other objections to the declaration..

Section 9, so far as it relates to the question involved here, is as follows: "The State fire marshal, his deputies and assistants, the chief of the fire department of all villages and cities where a fire department is established, and the mayor of cities or villages where no fire department exists, and the clerks of each township in the territory without the limits of an organized city or village, upon complaint of any person having an interest in any building or property adjacent, and without any complaint, shall have a right at all reasonable hours, for the purpose of examination, to enter into and upon all buildings and premises within their jurisdiction. Whenever any said officers shall find

any building, or other structure which, for want of proper repair, or by reason of age and dilapidated condition, or for any cause, is especially liable to fire, and which is so situated as to endanger other buildings or property, or so occupied that fire would endanger persons or property therein, and whenever any such officers shall find in any building, or upon any premises combustible or explosive materal, or inflammable conditions, dangerous to the safety of said buildings or premises, they shall order the same to be removed or remedied, and such order shall be forthwith complied with by the owner or occupant of said buildings or premises: *Provided, however,* that if the said occupant or owner shall deem himself aggrieved by such order, he may, within ten days, appeal to the State fire marshal and the cause of complaint shall be at once investigated by the direction of the latter, and unless by his authority the order is revoked, such order shall remain in force and be forthwith complied with by said owner or occupant. Any owner or occupant of buildings or premises failing to comply with the orders of the authorities above specified shall be punished by a fine of not less than ten dollars ($10) or more than fifty dollars ($50) for each day's neglect; such penalty to be sued for in the name of the People of the State of Illinois, upon the complaint of the fire marshal, assistant fire marshal, or the State's attorney, or of any officer named herein, in the county in which such building or buildings shall be situated, before any justice of the peace or in any court of record, with right of appeal, and such penalty when recovered shall be paid into the county treasury of the county wherein such recovery is had."

The chief objection to the constitutionality of this section is that it does not fix any rules by which the fire marshal shall determine when a building shall be declared to be, "for want of proper repair, or by reason of age and dilapidated condition, or for any cause," especially liable to fire, or when said building is "so situated as to endanger

other buildings or property, or so occupied that fire would endanger persons or property therein," and that therefore the vesting of the power in the fire marshal to determine when such conditions arise is, in the absence of any rule by which such shall be determined, a delegation of legislative and judicial authority. While the declaration filed in the case contains averments in addition to the charge of refusal to obey the order of the fire marshal, yet this section, by the provision that "any owner or occupant of buildings or premises failing to comply with the orders of the authorities above specified shall be punished by a fine," etc., expressly constitutes such refusal the basis of action against such property owner, and if said section is unconstitutional there is no basis for the declaration and the circuit court did not err in sustaining appellee's demurrer.

It is well settled that the power to make laws for a State is vested in the legislature. This is a sovereign power, requiring the exercise of judgment and discretion, and as such cannot be delegated. (Sutherland on Stat. Const. sec. 67.) The legislature may authorize others to do that which it cannot do itself in the carrying out of valid laws. (*Block v. City of Chicago,* 239 Ill. 251.) The power to make a law and the conferring of an authority and discretion as to its execution, which authority is to be exercised under and in pursuance of the law, mark the true distinction between powers which the legislature can delegate and those which it cannot delegate. (*Arms v. Ayer,* 192 Ill. 601; *People v. Grand Trunk Western Railway Co.* 232 id. 292.) As was said in *Yick Wo v. Hopkins,* 118 U. S. 356, any law that compels a man to hold "any material right essential to the enjoyment of life at the mere will of another seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." Arbitrary power, under the rules of law in this State and elsewhere, cannot be delegated by the legislature. (*Noel v. People,* 187 Ill. 587; *Cicero Lumber Co. v. Town of Cicero,* 176

id. 9; *City of Chicago* v. *Trotter*, 136 id. 430; *Sheldon* v.
*Hoyne*, 261 id. 222.) In *Board of Administration* v. *Miles*,
278 Ill. 174, this court held to be unconstitutional section 23
of the act of 1912 revising the law in relation to charities,
for the reason that said section vested in the administrative
officers the power to determine, in their discretion, whether
or not the law should be enforced with reference to indi-
.viduals in the same situation without any rules or limita-
tion for the exercise of such discretion.

The rule is well settled in this State that the purpose of
constitutional provisions is to protect every citizen in his
personal and property rights against the arbitrary action of
any person or authority, and a statute which subjects any
person's rights to the discretion of an officer, without any
rules or provisions in the law to control the officer, violates
such constitutional provisions. (*People* v. *Vickroy*, 266 Ill.
384; *Moore* v. *Mayor of Danville*, 232 id. 307; *Sheldon*
v. *Hoyne, supra; Noel* v. *People, supra.*) In the more re-
cent case of *Kenyon* v. *Moore*, 287 Ill. 233, the constitu-
tionality of section 89 of the general School law, as amended
in 1917, was under consideration. In that case the section
did not prescribe what should constitute the requisites to the
formation of a satisfactory and efficient high school district
but delegated to the county superintendent of schools in
each of the several counties the power to consider and de-
termine what would make a satisfactory and efficient high
school district, and if in his judgment the proposed dis-
trict did not meet the requirements specified, he by that
act was given the power to refer the petition back with
his recommendation or deny the prayer of it. That sec-
tion was held invalid, in that it attempted to confer upon
the county superintendent a discretion as to what the law
should be. In the present instance the section in question
lays down no rule by which the fire marshal is to deter-
mine when a building is especially liable to fire. It may
be "for want of proper repair." What is proper repair is

294 - 14

entirely within the discretion of the fire marshal. It may be "by reason of age and dilapidated condition." What shall constitute age and dilapidated condition is wholly within the discretion of the fire marshal. It may be "or for any cause," leaving to the fire marshal complete arbitrary power to nominate the cause and determine its effect on any building. From his decision there is no appeal.

Appellant cites *Arms* v. *Ayer, supra,* as authority for the contention that the section in question does not delegate legislative or judicial power to the fire marshal. The act under consideration there was the Fire-escape act of 1897. That law provided that certain specific things be done by the owners of certain classes of buildings. The duties of the owner were set out in the law and made as specific as legislation could well make them. Section 3 of that act, defining the duties of the inspector of factories, vested that official with the power simply to ascertain whether or not the law had been complied with and to give notice to the owner in case of failure to comply. The penalty in the act was for failure to comply with its requirements. It was objected in that case that the statute imposed legislative power upon the inspector of factories, in that it authorized him to determine how many and in what position fire-escapes should be placed. It was held, however, that the act was complete in all its details as to requiring fire-escapes and fixing the duties of the owners of buildings, and that in the execution of the law the inspector of factories was given discretion merely as to number, location, material and construction. It was also held that the act gave no judicial power to the inspector of factories.

In *Block* v. *City of Chicago, supra,* the city passed an ordinance prohibiting the exhibition of obscene and immoral pictures. That case arose over the prosecution of the plaintiff in error for violation of the provisions of the ordinance and he filed a bill in equity to enjoin the enforcement of the ordinance. The ordinance required those engaged in the

business of exhibiting moving pictures to secure a permit for their exhibition and provided that the chief of police should issue a permit for exhibiting all pictures which were not obscene or immoral. It was urged that the ordinance was void because it delegated legislative and judicial powers to the chief of police by giving him the power to determine whether a picture or series of pictures was immoral or obscene without opportunity of the applicant to have that question determined by a court or a jury. It was held, however, that the average person of healthy and wholesome mind knows what the words "immoral" and "obscene" mean and can intelligently apply the test to any picture presented to him; that there was therefore no lawful objection to the determination of. the question by the chief of police. The court in its opinion cites clause 45 of section 1 of article 5 of the City and Village act, which expressly authorizes the passage of an ordinance to prohibit the exhibition of immoral or obscene pictures, thus placing upon the exhibitor a certain duty under the law.

The cases cited are to be distinguished from the case at bar. In the instant case the act does not define what constitutes a legal building. The legislature has power to determine what shall be a legal or lawful building with regard to its being liable to destruction by fire, and under such a law the fire marshal would have a right to find, as a matter of fact, whether or not any building complies with the law. Here he is given not only the power to determine whether or not a building is an illegal building, but likewise to determine what shall be done with it. He is given the arbitrary power of determining these matters without rule or limitation by which such determination shall be reached, except that such building shall be especially liable to fire. All buildings are to a greater or less degree subject to be destroyed by fire. Some are especially liable to fire while others are almost fireproof. By this act the fire marshal is given the power arbitrarily to determine, without

the intervention or assistance of a court or jury, where the line of demarkation is in any case. By his decision the property rights of individual citizens may be taken away without just compensation or due process of law, as required by the constitution. Section 9 does not provide what the duties of the property owner shall be with reference to keeping his building in such condition as to avoid the effects of the fire marshal's decision in the matter, other than that he shall comply with the fire marshal's order, whatever that may be. Therefore, until the fire marshal has spoken it cannot be known what the law is in relation to the maintenance of any certain building. Furthermore, by its provision that the property owner shall be subjected to a fine of not less than $10 nor more than $50 for each day's neglect to "comply with the orders of the authorities above specified," this section of the act places in the hands of a deputy fire marshal the power to subject the property owner to fine without the right of the latter to contest the correctness of the deputy marshal's findings further than by an appeal to the fire marshal, whose power is the same as that of the deputy and is exercised in substantially the same manner. In a suit to recover penalties the property owner has no right under said section to have the judgment of the fire marshal reviewed by a court or jury to determine whether or not the building condemned constitutes a building which the owner may maintain according to said law, but his liability becomes absolute if he fails to carry out the fire marshal's order. The legislature cannot delegate to a single officer the power to arbitrarily determine the property rights of citizens in this manner. Discretion vested in him leaves it entirely within his power to condemn one building and leave another shown to be in the same condition. Instead of being a uniform law applicable alike to all similar buildings throughout the State, it is subject to the varying opinions of the different fire marshals in the several localities or their successors in the same localities.

It is an arbitrary discretion and opens the way for unjust discrimination. *Kenyon* v. *Moore, supra; City of Galesburg* v. *Hawkinson,* 75 Ill. 152; *People* v. *Vickroy, supra; Board of Administration* v. *Miles, supra.*

It is urged that this act can be construed as affording the owner or occupant the right to a hearing before a court or jury on the question whether he is violating the act concerning the maintenance of his building. The act fixes no duty on the part of the owner or occupant other than that the order of the fire marshal "shall be forthwith complied with." The basis for the fine imposed is a failure "to comply with the orders of the authorities above specified." We are unable to see how any other issue can form the basis of the penalty sought to be imposed. To construe the act as urged would be to base the penalty on a state of facts not made the basis of penalty by the act by reading into it provisions not therein contained.

It cannot be doubted that it is the duty of courts to so construe an act of the legislature as to uphold its constitutionality if it can reasonably be done, and to this end doubtful construction should be resolved in favor of the validity of the law. It is also free from doubt that where the meaning of an act is plain and that meaning contravenes the constitution, it is equally the duty of the courts to so hold. While the legislature may reasonably regulate the manner in which property may be used, and regulations tending to lessen the hazard of fire are desirable, we are of the opinion that said section, because of the delegation of arbitrary discretion, is without the power of the legislature to enact.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE CARTWRIGHT, dissenting:

The opinion adopted in this case clearly demonstrates that the General Assembly, in the legitimate exercise of the police power for the protection of property from hazards of

fire, could not define the exact conditions which would render a building or other structure dangerous to other buildings or property, either for want of proper repair or by reason of age and dilapidated conditions. It must express the same in general terms and the initial determination of the fact must be left to some administrative public official or agency. There is no constitutional objection in that regard to the act in question, and I do not agree with the conclusion that there is no appeal from the decision of the fire marshal. The act does not give any power to the fire marshal to enforce his decision except by complaint to a justice of the peace or a court of record. It seems to me unreasonable to say that on such complaint being made a property owner cannot dispute the fact but must pay the penalty merely because of the decision of the fire marshal. In my judgment the legislative intention in providing for a judicial inquiry was to permit the property owner to make a defense that his property was not in such condition as to endanger other buildings or property, and as so construed the act is free from any constitutional objection.

Mr. Justice Dunn, dissenting:

It is the duty of the court in considering the constitutionality of a statute to give it such construction, if possible, as will sustain it rather than one which will overthrow and destroy it. The purpose of the statute in question is to provide against the calamities of fire, and it is clearly within the police power of the State to provide for a system of inspection and for the enforcement of the duty of the owners of buildings to keep them in such condition as not to expose other buildings and persons and property in them to the danger of fire. The objection made to the statute is that it does not fix any rules by which it may be determined when a building shall be declared especially liable to fire, or so situated as to endanger other buildings or property, or so occupied that fire will endanger persons or property therein, and that the power granted the fire mar-

shal, in the absence of such rules, is a delegation of legislative and judicial authority to the arbitrary decision of the fire marshal.

Statutes providing against the dangers from fire are necessarily somewhat general in their terms, because it would be impossible to describe in detail the various conditions which, under the different circumstances of location, construction, condition, occupation, use and surroundings of buildings, would render them dangerous. In *People* v. *Reynolds*, 5 Gilm. 1, it was held that to establish the principle that whatever the legislature may do it shall do in every detail or else it shall go undone, would be almost to destroy the government. It is there said (p. 13): "Necessarily, regarding many things, especially affecting local or individual interests, the legislature may act either mediately or immediately. We see, then, that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly yet cannot understandingly or advantageously do itself. Without this power legislation would become oppressive and yet imbecile." Section 9 does not confer the power upon the fire marshal arbitrarily to decide that a building which is not dangerous with reference to fire is dangerous, and does not make his finding that it is so, conclusive upon the owner. When it says that whenever any of the officers mentioned in the section shall find a building is especially liable to fire and so situated as to endanger other buildings or property he shall order the same to be removed or remedied and such order shall forthwith be complied with by the owner or occupant of the building, it does not make the decision of the officer, or of the State fire marshal on appeal, conclusive upon the owner of the building. No penalty can be imposed for disregard of the order except upon the judgment of a court rendered upon a trial, in which the owner has the right to appear and contest the fact. The duty of the fire marshal is not

legislative, for the enforcement of the law is not left to his discretion. His duty is merely that of inspection and the supervision of the enforcement of the law. Neither is his duty judicial, for his acts are merely ministerial in ascertaining, by inspection, the condition of buildings and notifying the owners or occupants. The penalty imposed by section 9 is not for disobedience to the order of the officer, but is for a failure to keep his property in condition which will not be dangerous to neighboring property after having been notified of its dangerous condition.

The exercise of judgment by a ministerial officer in the performance of his duties does not, of itself, indicate the performance of either legislative or judicial functions. In *Arms* v. *Ayer,* 192 Ill. 601, an act which gave discretion to an inspector as to the number, location, material and construction of fire-escapes was held not to be a delegation of legislative or judicial power, and in *People* v. *Cregier,* 138 Ill. 401, discretion was held to be properly conferred upon an officer authorized to issue dram-shop licenses to determine the number to be granted and the location. An ordinance giving the commissioner of public works authority to approve a device to prevent the spilling of oil on the streets is not in violation of the constitution. (*Spiegler* v. *City of Chicago,* 216 Ill. 114.) The cases in which laws have been held unconstitutional as being a delegation of legislative or judicial powers have been those which vested in the officer discretion as to whether the law should be enforced or not, as in *Sheldon* v. *Hoyne,* 261 Ill. 222, where section 2 of the Gas Safety Appliance act was held invalid because of a proviso which exempted from the requirements of the section as to the installation of gas safety appliances certain cases unless the conditions under which the gas was used were such as to endanger life or property, and then provided that in all such cases, "at the discretion of said duly authorized officer or officers, all such buildings may be required to be equipped as provided for herein." In *Cicero*

*Lumber Co.* v. *Town of Cicero,* 176 Ill. 9, an ordinance was held to vest the board of trustees with arbitrary power which forbade the use of heavy vehicles on a pleasure driveway except "upon special permission" of the board of trustees, without prescribing any general condition upon which such permission should be granted.    In *Noel* v. *People,* 187 Ill. 587, section 8 of the Pharmacy act of 1895 was held invalid because it authorized the board of pharmacy, "in their discretion," to issue permits to parties engaged in business in villages or other localities to sell domestic remedies and proprietary medicines.    In *Block* v. *City of Chicago,* 239 Ill. 251, objection was made to an ordinance of the city of Chicago regulating the exhibition of moving pictures, authorizing the chief of police to issue a permit for all pictures which are not obscene or immoral and prohibiting a permit for the exhibition of any obscene or immoral pictures, because the ordinance fixed no standard by which the question was to be determined, but the court overruled the objection, saying: "Manifestly, it would be impossible to specify in an ordinance every picture or particular variety of picture which would be considered immoral or obscene, and no definition could be formulated which would afford a better standard than the words of the ordinance.    It is doubtless true, as said by counsel, that there are people who differ upon the subject as to what is immoral or obscene. There are the shameless and unclean, to whom nothing is defilement and from whose point of view no picture would be considered immoral or obscene.    Perhaps others could be found, with no laxity of morals, who pay homage to art and would not regard anything as indelicate or indecent which had artistic merit, and would look upon any person entertaining different sentiments as of inferior intelligence, without proper training on the subject and blinded with bigotry. Both classes are exceptional, and the average person of healthy and wholesome mind knows well enough what the words 'immoral' and 'obscene' mean and can intelligently

apply the test to any picture presented to him. There is as great diversity of opinion as to what constitutes good moral character, but it is beyond question that an officer authorized to grant a license to keep a dram-shop may determine whether the applicant has a good moral character, and there has been no ground for complaint that the power has been wrongfully or oppressively exercised against applicants. It is presumed that the chief of police, or the mayor in case of an appeal to him, will perform his duty with reasonable intelligence and in accordance with the generally accepted meaning of the words. If there should be an abuse of power on the part of either the chief of police or the mayor, the ordinance does not prevent an application to a court to compel either officer to perform his duty and issue a permit for a picture which is not immoral or obscene." So in this case, it would be difficult to define any standard by which to determine whether any building or structure was especially liable to fire, and so situated as to endanger other buildings or property, or so occupied that fire would endanger persons or property therein, in words more definite than the language of the statute itself, but the average person of reasonable intelligence can readily determine the question.

The statute does not confer upon the State fire marshal or other officer the power to arbitrarily determine that a building, for want of proper repair or by reason of age and dilapidated condition, was especially liable to fire and would endanger persons and property. If he should make such arbitrary determination it could not be enforced against the owner or occupant of the property, who has the right to have the question submitted to and determined by a jury before the penalty can be enforced against him.

Mr. JUSTICE CARTER, also dissenting:

I agree with the views expressed in the foregoing dissenting opinions of Mr. Chief Justice Cartwright and Mr. Justice Dunn.