(No. 19259.—

MAUDE W. WELTON *et al.* Appellants, *vs.* EVA H. HAMIL-
TON *et al.* Appellees.

*Opinion filed April 23, 1931.*

Winston, Strawn & Shaw, (Harold Beacom, Paul H. Moore, and A. D. Welton, Jr., of counsel,) for appellants.

Samuel A. Ettelson, Corporation Counsel, Frank J. Corr, Cora B. Hirtzel, Barnet Hodes, and Sonnenschein, Berkson, Lautmann & Levinson, (John Lyle Vette, Maurice Berkson, and Isaac E. Ferguson, of counsel,) for appellees.

Mr. Chief Justice Dunn delivered the opinion of the court:

Maude W. Welton and Rebecca S. Chandler sued out of the superior court of Cook county a writ of *certiorari* directed to the zoning board of appeals of the city of Chicago requiring it to certify to the superior court a transcript of its order of March 27, 1928, on the appeal of Maurice L. Bein, purporting to act for the 40 East Oak Street

Building Corporation, from an order of the commissioner of buildings of the city of Chicago disapproving his application for a permit to erect a twenty-story apartment building at Nos. 36 to 42 East Oak street, because the building proposed to be built did not conform to the requirements of the zoning ordinance, together with all its proceedings on such writ. The board of appeals made a return of its proceedings and the court upon a hearing ordered the writ quashed. The petitioners have appealed, assigning as error, among other things, that the statute authorizing the creation of the board of appeals and the ordinance creating such board are unconstitutional and the court erred in holding otherwise.

The following is the order made by the board of appeals:

"BOARD OF APPEALS, CITY OF CHICAGO,
*603 City Hall.*

Cal. No. 90-28-Z
Map No. 21 Sec. 3
Minutes of meeting
March 27, 1928.

Appellant: Maurice L. Bein
Appearances for: Barnet Hodes, Attorney
Appearances against:
Premises affected: 36-42 E. Oak street.
Subject: Appeal to vary the requirements of the zoning ordinance.
Action of board:
Appeal granted. The vote

|  | Affirmative | Negative | Absent |
|---|---|---|---|
| Eva H. Hamilton | | | |
| James A. Creighton | | | |
| John A. Lind | | | |
| Louis J. Meyers | | | |
| John E. Traeger | | | |

"The resolution:
"Whereas, Maurice L. Bein, for the 40 East Oak Street Building Corporation, owner, heretofore applied to the commissioner of buildings for a permit for the erection of a 20-story apartment hotel building on premises at 36-42 East Oak Street; and

"Whereas, the proposed building is to be located in a fourth volume commercial district and would exceed by 141 feet the alley line height limit and would violate the volume district regulations of the zoning ordinance; and

"Whereas, the commissioner of buildings on March 12, 1928, in acting upon the said application rendered the following decision: 'Application not approved. Proposed improvement does not conform with requirements of zoning ordinance;' and

"Whereas, an appeal under the law has now been taken to the board of appeals to vary or modify the provisions of the zoning ordinance so as to permit the erection of the proposed building; and

"Whereas, said appeal was taken on the 14th day of March, 1928, by filing with the commissioner of buildings and with the board of appeals a notice of appeal, specifying the grounds thereof; and

"Whereas, an inspection of the premises was made by members of the board; and

"Whereas, a public hearing was held on this appeal by the board of appeals at its regular meeting held on March 20, 1928, after giving due notice thereof to the parties; and

"Whereas, the board of appeals, having fully heard the testimony and arguments of the parties and being fully advised in the premises, finds that in this case there is unnecessary hardship in the way of carrying out the strict letter of the zoning ordinance, and that the spirit of the zoning ordinance may be observed, public safety and welfare secured and substantial justice done by permitting the erection of the proposed building. It is therefore

"*Resolved,* That the board of appeals, by virtue of the authority conferred upon it, does hereby make a variation in the application of the volume district regulations of the zoning ordinance, and that the appeal be and it hereby is granted on condition that all permits necessary for the prosecution of the work shall be obtained within six months and the building completed within twelve months after the date of this action, and the commissioner of buildings is hereby ordered to issue a permit herein in conformity with the provisions of this resolution; and

"*Resolved, further,* that plans in triplicate shall be approved by the board before a building permit is issued herein."

The order shows that the proposed building is to be erected in a fourth volume commercial district, and section 19 of the zoning ordinance, which is attached to the return, provides that "(c) for each one foot that a building or portion of it is distant from the center line of any alley, such building, or such portion thereof, may be erected

nine feet in height, provided this regulation shall not be applied along that part of an alley for the 55 feet of its length nearest the street which the alley intersects." Plans of the building and plats of the locality show that the property of the 40 East Oak Street Building Corporation on which it proposes to erect the hotel was purchased about a year before the hearing by the board of appeals, after the passage of the zoning ordinance, is situated on the north side of East Oak street, on which it fronts 91 feet and 9 inches, and extends back 100 feet and 8 inches to an alley 16 feet wide. Immediately north of the alley, opposite the rear of the proposed building, are the premises of the appellants, extending 150 feet from a point about 10 feet east of the proposed building to a point about 50 feet west of it. These premises front on the south side of East Bellevue place, are of the same depth as the 40 East Oak Street Building Corporation's property, and are owned severally, the east 39 feet by Mrs. Welton and the west 111 feet by Mrs. Chandler.

It is contended by the appellants that the authority attempted to be conferred upon the city council by the Zoning act to establish a board of appeals is in excess of the constitutional limitation of the legislative power because it confers upon the board of appeals authority to determine and vary the application of the zoning regulations without restriction; that the ordinance is invalid because the statute authorizing its appointment is unconstitutional and because it contains no general or specific rules in accordance with which the board of appeals may determine and vary the application of the ordinance, as required by the statute; and that the order of the board of appeals is void because it is arbitrary, is not based upon any finding of facts and is not justified by the evidence.

All the legislative power of the State is vested by the constitution in the General Assembly, consisting of a senate and house of representatives, and this power may not

be delegated. (*People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson,* 228 id. 522.) The legislature must decide what the law shall be, and a law must be complete in all its terms and conditions when it leaves the legislature. (*Arms* v. *Ayer,* 192 Ill. 601; *Sheldon* v. *Hoyne,* 261 id. 222.) Any law which vests in the discretion of administrative officers the power to determine whether the law shall or shall not be enforced with reference to individuals in the same situation, without any rules or limitations for the exercise of such discretion, is unconstitutional. (*Board of Administration* v. *Miles,* 278 Ill. 174; *Kenyon* v. *Moore,* 287 id. 233; *Jackson* v. *Blair,* 298 id. 605.) The principle has long been recognized and is repeatedly announced in our decisions as well as those of other courts, that while the legislature cannot delegate its general legislative authority, "still it may authorize many things to be done by others which it might properly do itself. * * * Necessarily, regarding many things especially affecting local or individual interests, the legislature may act either mediately or immediately. We see, then, that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly yet cannot understandingly or advantageously do itself. Without this power legislation would become oppressive and yet imbecile. Local laws almost universally call into action, to a greater or less extent, the agency and discretion, either of the people or individuals, to accomplish in detail what is authorized or required in general terms. The object to be accomplished or the thing permitted may be specified and the rest left to the agency of others, with better opportunities of accomplishing the object or doing the thing understandingly." (*People* v. *Reynolds,* 5 Gilm. 1.) The legislature cannot divest itself of its proper function to determine what the law shall be but it may authorize others to do those things which it might properly do but cannot do

understandingly or advantageously. (*Block* v. *City of Chicago*, 239 Ill. 251.) "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." (Sutherland on Stat. Const. sec. 68.) Examples of this distinction are found in the cases of *People* v. *Cregier*, 138 Ill. 401, and *Harrison* v. *People*, 222 id. 150, where discretion given to the officer authorized to issue dram-shop licenses to determine the number to be issued and their location was sustained; *Arms* v. *Ayer, supra,* where an act giving discretion to an inspector as to the number, location, material and construction of fire-escapes was sustained; *Spiegler* v. *City of Chicago*, 216 Ill. 114, which sustained an ordinance which authorized the commissioner of public works to approve a device to prevent the spilling of oil on the streets; *Block* v. *City of Chicago, supra,* sustaining an ordinance prohibiting the exihibition of moving pictures without a permit and committing to the determination of the chief of police the question whether such pictures were obscene or immoral; *City of Chicago* v. *Trotter*, 136 Ill. 430, holding an ordinance invalid which prohibited any parade or procession upon the streets of the city until a permit should have been first obtained from the police department; *Cicero Lumber Co.* v. *Town of Cicero*, 176 Ill. 9, holding an ordinance void, as vesting the board of trustees with arbitrary power, which forbade the use of heavy vehicles on a pleasure driveway except "upon special permission" of the board of trustees, without prescribing any general condition upon which such permission should be granted; *Noel* v. *People*, 187 Ill. 587, which held section 8 of the Pharmacy act of 1895 invalid because it authorized the board of pharmacy, "in their discretion," to issue permits to persons engaged in business in villages or other localities to sell domestic rem-

edies and proprietary medicines under such restrictions as the board of pharmacy might deem proper; *Sheldon* v. *Hoyne, supra,* which held section 2 of the Gas Safety Appliance act invalid because of a proviso which exempted from the requirements of the section as to the installation of gas safety appliances certain cases unless the conditions under which the gas was used were such as to endanger life or property, and then provided that in all such cases, "at the discretion of said duly authorized officer or officers, all such buildings may be required to be equipped as provided for herein;" *People* v. *Sholem,* 294 Ill. 204, which held section 9 of the act of 1909, creating the office of State fire marshal, to be an unconstitutional delegation of legislative and judicial power to the fire marshal because it required that officer, whenever he should find any building or other structure which for want of proper repair or by reason of age and dilapidated condition, or for any cause, is especially liable to fire, and is so situated as to endanger other buildings or property, or so occupied that fire would endanger persons or property therein, to order such dangerous conditions to be removed or remedied, and imposed a penalty upon the owner or occupant of such building or premises failing to comply with such order, without fixing any rules by which the fire marshal should determine when a building should be declared to be, "for want of proper repair or by reason of age and dilapidated condition, or for any cause," especially liable to fire, or when said building is "so situated as to endanger other buildings or property, or so occupied that fire would endanger persons or property therein;" *City of Chicago* v. *Matthies,* 320 Ill. 352, in which the owner of an apartment building, which under the provisions of the building code of the city was a class 6 building, was charged with changing its use to that of a rooming house, which was a class 2b building, in violation of the terms of the ordinance which prohibited such change unless permission were first ob-

tained from the commissioner of buildings and the requirements of the ordinance in regard to buildings of class 2*b* were complied with. The ordinance contained no definition of the term "rooming house," and it was held that the term was not one of generally accepted definition, and there was therefore no limitation on the power of the building commissioner to determine when a building is being used as a rooming house; that an ordinance which leaves to an executive officer the definition of the thing to which the ordinance applies, such definition not being commonly known, is an unconstitutional and void delegation of legislative power.

In each of the first five cases cited the discretion authorized to be exercised by the public official concerned was not as to what the law was or should be but was in regard to its execution, to be exercised under and in pursuance of the law in the determination of the number of dram-shop licenses which should be issued and the location of the dram-shops authorized to be licensed; in the approval by the inspector of factories of the number, location, material and construction of the fire-escapes required to render access to such fire-escapes from each story easy and safe, as required by the law; in the approval by the commissioner of public work of the drip-pans or other devices which should effectually prevent the spilling of turpentine, oil, etc., on the street; in the ascertainment by the chief of police whether the pictures proposed to be exhibited were immoral or obscene. These were all things proper for the legislature to do itself but were also things impracticable for it to do advantageously or understandingly. The law stated the object to be accomplished or the thing permitted and then called into action the local authorities or agencies to accomplish in detail, with their better opportunities, the object which is authorized or required in general terms.

The other six cases cited are of a different character. Street parades are not necessarily public nuisances or un-

lawful but they may require regulation. The legislature cannot, however, commit their regulation to the unregulated discretion or caprice of a chief of police. It must determine what parades are lawful and what unlawful and not leave that question to the chief of police. The use of traffic teams on a pleasure driveway may be prohibited, but the power of a village to regulate the use of its streets does not authorize such a corporation to prohibit the use of traffic teams on such a driveway except "upon special permission" of the board of trustees. So in each of the remaining cases cited, the law or the ordinance in the particular case was incomplete when it came out of the legislature or the city council, and its force and application to the particular case could only be known when the board of pharmacy, the fire marshal, the commissioner of buildings, or other public official upon whom the legislature or the council had undertaken to confer the authority to say the final word which would give effect to the law or the ordinance, had exercised its or his discretion.

The first Zoning act in Illinois was enacted in 1919. The succeeding General Assembly repealed this act and substituted in its place the act of 1921, (Laws of 1921, p. 180,) which was held in *City of Aurora* v. *Burns,* 319 Ill. 84, to be a valid enactment as against the constitutional objections made in that case, and as amended in 1923 is still in force. (Laws of 1923, p. 268.) It is the power which section 3 as amended in 1923 attempts to confer on the city council to create a board of appeals which the appellants attack as unconstitutional. The provisions of that section necessary to be considered in this case are as follows:

"All ordinances passed under the terms of this act shall be enforced by such officer of the city, village or incorporated town as may be designated by ordinance. The regulations by this act authorized, may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent and in accord-

ance with general or specific rules therein contained. Such city council and president and board of trustees may provide for the appointment of a board of appeals consisting of five members. * * *

"Such board of appeals shall hear and decide appeals from and review any order, requirement, decision or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to this act. It shall also hear and decide all matters referred to it or upon which it is required to pass under any such ordinance. The concurring vote of four members of the board shall be necessary to reverse any order, requirement, decision or determination of any such administrative official, or to decide in favor of the applicant any matter upon which it is required to pass under any such ordinance or to effect any variation in such ordinance. Such an appeal [may] be taken by any person aggrieved or by an officer, department, board or bureau of the municipality. * * *

"The board of appeals shall fix a reasonable time for the hearing of the appeal and give due notice thereof to the parties and decide the same within a reasonable time. Upon the hearing, any party may appear in person or by agent or by attorney. The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination as in its opinion ought to be made in the premises, and to that end shall have all the powers of the officer from whom the appeal is taken. Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, the board of appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done."

The appellants' constitutional objection that this statute attempts to confer on the board of appeals the power to vary or modify the application of any of the regulations or provisions of the ordinance relating to the use, construction or alteration of buildings or structures or the use of land whenever in the opinion of the board there are practical difficulties or unnecesary hardship in the way of carrying out the provisions of the ordinance but provides no rule or standard for the guidance of the board other than its own uncontrolled discretion must be sustained, in accordance with the principles announced and consistently adhered to in our decisions in the cases which have been cited. That part of section 3 which purports to confer upon the board of appeals authority to vary or modify the application of the provisions of the ordinance where there are practical difficulties or unnecessary hardship in carrying out the letter of the ordinance is an unconstitutional delegation of legislative authority. The statute gives no direction, furnishes no rule and provides no standard for determining what are practical difficulties or unnecessary hardships which justify setting aside the provisions of the ordinance and varying or modifying their application but leaves those questions to be determined by the unguided and unlimited discretion of the board. "Practical difficulties" and "unnecessary hardship" are not well defined and understood terms having a specific meaning which would enable an average person of ordinary intelligence to apply the tests of "practical difficulty" and "unnecessary hardship" to any particular case. The determination of the question whether there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the ordinance is no less difficult than the question whether there is a special liability to fire for want of proper repair or by reason of age and dilapidated condition, as in *People* v. *Sholem, supra;* the question whether a proposed community high school district has sufficient territory, assessed valuation and

prospective high school pupils to form a satisfactory and efficient high school, as in *Kenyon* v. *Moore, supra;* or the question whether a building is being used for rooming house purposes, as in *City of Chicago* v. *Matthies, supra.*

Practical difficulties and unnecessary hardships, under this statute, are whatever conditions the board of appeals decides to be such difficulties and hardships. In this particular case the board of appeals did not make any attempt to state what the difficulty or hardship was in the way of carrying out the strict letter of the ordinance or in what respect the spirit of the zoning ordinance might be observed, the public safety and welfare secured and substantial justice done by permitting the erection of the proposed building. The board simply made the general finding that there is unnecessary hardship, etc., and ordered the issue of the permit, and the only thing decided is that the board of appeals thought a permit ought to issue in this case in accordance with the plans submitted and in violation of the express provisions of the ordinance but with no indication of the reason why. The ordinance had been in existence for years before the 40 East Oak Street Building Corporation bought the lot in question with full knowledge that it could not lawfully construct on that lot the building it is now proposing to construct there. The commissioner of buildings refused a permit for the construction of the building and could not lawfully have done otherwise, and the only difficulty or hardship appearing in the record in the way of carrying out the strict letter of the zoning ordinance is, that if the corporation is compelled to comply with the provision of the ordinance which restricts the height of its building on the alley to 72 feet, it will be unable to have as many or as large rooms or as many square feet of renting space in its building as it could have if permitted to erect the building on the alley to the height of 214 feet without set-backs, as required by the ordinance, and will therefore be unable to make as much money on its invest-

ment as it otherwise would. It cannot be supposed that this is the kind of difficulty or hardship which the legislature had in mind when in the exercise of its police power, for the benefit of the safety, health and general welfare of the inhabitants of the city, it enacted the statute conferring additional powers upon city councils concerning buildings and structures, the intensity of use of lot areas, the classification of trades, industries, buildings and structures with respect to location and regulation, the creation of districts of different classes, and the establishment of regulations or restrictions applicable thereto. The mere fact that the owner of a particular parcel of property in a certain district, acquired long after it was classified under the zoning ordinance, can make more money out of it if permitted to disregard the ordinance instead of required to comply with it, is neither a difficulty nor a hardship authorizing the board of appeals to permit such owner to disregard the ordinance so far as it interferes with his plans for a more profitable use, and the legislature was without power to authorize an administrative board to grant such permission.

The part of section 3 which purports to authorize the board of appeals to vary or modify the application of any of the regulations or provisions of the zoning ordinance relating to the use, construction or alteration of buildings or structures or the use of land is arbitrary and unconstitutional because it is a delegation to an administrative body of the power of legislation, which can be exercised only by a legislative body. Other provisions of the section are not questioned. The provisions of the ordinance based on this part of the section are also unconstitutional, and while the creation of the board of appeals is not shown to be invalid, it is without authority to vary or modify the regulations or provisions of the ordinance.

It is contended by the appellees that the appellants waived the question of the constitutionality of the act because it was not raised by them at the hearing before the

board of appeals. The question here presented is one of jurisdiction of the subject matter, and it is a principle which does not require the citation of authority that jurisdiction of the subject matter cannot be waived, or, as it is otherwise stated, cannot be conferred by consent of parties. Jurisdiction is authority conferred by law to hear and determine a cause. Jurisdiction of the subject matter refers to the general class of cases to which the particular case in question belongs and is always conferred by law or it does not exist. If a tribunal transcends the limits which the constitution or the law has prescribed for it and assumes to act where it has no jurisdiction its acts will be utterly void. Any act of a tribunal beyond its jurisdiction is null and void whether without its territorial jurisdiction or beyond its powers. A privilege defeating jurisdiction may be waived if the court has jurisdiction of the subject matter. Want of jurisdiction may be taken advantage of by plea in abatement, and must be taken advantage of before making any plea to the merits, if at all, when it arises from formal defects in the process or when the want of jurisdiction is over the person, but where the cause of action is not within the jurisdiction granted by law to the tribunal it will dismiss the suit at any time when the fact comes to its notice.

The board of appeals is not a court but an administrative board which has no judicial powers and the hearing before it is not a judicial proceeding. (*People* v. *Peoria and Pekin Union Railway Co.* 273 Ill. 440; *City of Aurora* v. *Schoeberlein,* 230 id. 496.) It has no legislative powers and its only authority is in connection with the execution of the law. The attempted unconstitutional delegation to it of legislative power gave it no jurisdiction or authority to amend or modify the ordinance or change its application to the facts in this case. It is well settled that, with certain exceptions, an individual may waive even a constitutional provision intended for the protection of his property

rights when no question of public policy or public morals is involved. (Cooley's Const. Lim.—7th ed.—250; *Muses* v. *United Surety Co.* 199 N. Y. 459; *Hellen* v. *City of Medford,* 188 Mass. 42.) Where the right or privilege claimed involves liability to a money judgment the constitutional right or privilege may be waived, not only expressly but by a course of conduct which in justice and right should prevent an attack on the constitutionality of the law. (*Shoal Creek Coal Co.* v. *Industrial Com.* 300 Ill. 551.) The waiver need not rest entirely upon the strict and technical principles of an estoppel but it may assume the nature of an implied contract, as in the case where the party sought to be charged with liability has induced the other party to the controversy to act in compliance with the unconstitutional enactment and at the request of the former party to furnish work and material from which he has received the benefit, and from such facts a contract may be implied that the party at whose request and for whose benefit the work has been done will pay for it in the manner provided for by the act under which the work was done. (*Shepard* v. *Barron,* 194 U. S. 553.) The rule involved in these cases is not applicable to the constitutional question of the jurisdiction of the tribunal whose action is brought into question. That question is excepted by the very terms of the rule as stated by Judge Cooley in his work on Constitutional Limitations which has been cited. The rule refers to a constitutional provision intended for the protection of the property rights of the person claiming its benefit and applies only when no question of public policy or public morals is concerned. The constitutional provision here in question is not one intended for the protection of the property rights of individuals and does involve a question of public policy. The constitutional provision is that which vests the entire legislative power of the State in the General Assembly. The object of that provision was not the protection of property rights but to declare the de-

pository of the legislative power, and the question of public policy lies at the foundation of government under our American constitutions and is the division of governmental powers into the legislative, executive and judicial departments and each department's independence of the other two. Such governmental power cannot be conferred by agreement of individuals.»

The decree is reversed and final judgment will be entered in this court reversing the order of the board of appeals and affirming the order of the building commissioner, with costs against the appellees other than the board of appeals.

*Judgment reversed.*

Subsequently, at the June term, upon motion for leave to file a second petition for rehearing, the following announcement was made:

Mr. CHIEF JUSTICE STONE: In this case there is a motion by the appellees for leave to file their second petition for rehearing. Their previous petition for rehearing was allowed, the cause was further considered, and at the April term, 1931, of this court an opinion was filed adhering to the previous decision. When a rehearing is allowed and the cause further considered it is the decision of the court, rather than the language employed or the reasons given in the opinion, which is the subject of reconsideration. When the decision originally made is adhered to on such reconsideration it will not be open to further review at the instance of the same party on petition for rehearing, though the reasons given for the decision may be modified in the new opinion or the grounds of the decision changed. This rule was announced in *Smith* v. *Dennison,* 101 Ill. 657, and in *Garrick* v. *Chamberlain,* 100 id. 476, and has been the rule of this court since that time.

The motion for leave to file a second petition for rehearing is denied.

*Motion denied.*