THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. INTERCOASTAL REALTY, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 84—1079

Opinion filed October 15, 1986.

Leo E. Holt, of Harvey, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Christopher J. Cummings, Assistant State's Attorneys, of counsel), for the People.

Howe & Hutton, Ltd., of Chicago (Jonathan T. Howe, Terrence Hutton, James F. Gossett, and Leo E. Smith, of counsel), for *amicus curiae.*

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, defendants, Intercoastal Realty, Inc. (Intercoastal), and Harriet Handy, were convicted of the offenses of criminal housing management (Ill. Rev. Stat. 1981, ch. 38, par. 23—5.1) and reckless conduct (Ill. Rev. Stat. 1981, ch. 38, par. 12—5). Intercoastal was fined $1,000 and $30 in costs. Harriet Handy was placed on one year's supervision and fined $500 plus $30 in costs. Both defendants appeal. We granted leave to the Institute of Real Estate Management to file an *amicus curiae* brief. Its brief supported the defendants.

At trial, the evidence presented established that Intercoastal was the company responsible for the maintenance, repair and collection of rents for property at 6101-03 South Drexel Avenue, also known as 905-13 East 61st Street in Chicago. Harriet Handy was the company president. The parties stipulated that the legal owner of the premises was the Exchange National Bank & Trust Company, as trustee under trust number 28716, and the beneficial owners of the trust were John and Dorothy Dickey.

Fred Mason, a building inspector for the city of Chicago, testified that, on December 16, 1981, he inspected the building and found pickets missing from a second-floor landing, water standing 4 inches deep in the basement, and broken plaster and peeling paint in some of the upstairs apartments. He made a second inspection on January 28, 1982, and found no change in the conditions at the 6101-03 South Drexel Avenue portion of the building. Although some work had been performed at 913 East 61st Street, he again found water standing in the basement.

Lavergna Rollins, also a city building inspector, inspected the above described premises on April 20, 1982. At that time, he found rotten wood on the rear porches, peeling paint on the building exterior, and broken windows. He testified that he saw garbage, debris and an abandoned refrigerator on the premises. Sewage and garbage odors permeated the building, and rats infested the garbage. Rollins also testified that he found broken plaster on all three floors at 6101-03 South Drexel Avenue as well as mice and roaches on some of the floors. Marble was falling off the walls in the vestibule, paint was peeling, and the door pane was out. He also found damage from a fire that had occurred at the rear of 6101 South Drexel. Upon reinspection of the property on November 23, 1982, and on

January 5, 1983, he found no change in the condition of the building.

James Vrchota, a criminal investigator for the Cook County Sheriff's Department, testified that he spoke with Harriet Handy on January 27, 1983, She told him that the company was responsible for the general management of the subject property and that she was aware of the building-code violations, which were being rectified as quickly as possible.

The defendants presented no evidence on their own behalf. After a jury trial, both defendants were found guilty of criminal housing management and reckless conduct. On appeal, defendants contend that: (1) the criminal-housing-management statute is void for vagueness and violates defendants' Federal constitutional rights; (2) the informations charging defendants with criminal housing management and reckless conduct did not sufficiently inform them of the nature and elements of the offenses, and (3) the trial court's instructions did not adequately inform the jury as to the nature and elements of the offenses.

■ Defendants first contend that the Illinois criminal-housing-management statute (Ill. Rev. Stat. 1981, ch. 38, par. 12—5.1) is unconstitutionally vague. The statute provides:

> "A person commits the offense of criminal housing management when, having personal management or control of residential real estate, whether as a legal or equitable owner of residential real estate or as a managing agent or otherwise, he knowingly permits by his gross carelessness or neglect the physical condition or facilities of the residential real estate to become or remain so deteriorated that the health or safety of any inhabitant is endangered." (Ill. Rev. Stat. 1981, ch. 38, par. 12—5.1(a).)

Defendants urge this court to find that the statute offends due process because it does not provide standards or guidelines which delineate with certainty the conduct proscribed. Specifically, they complain that the statute gives inadequate notice as to those conditions considered to be "deteriorated" which would bring defendants' actions within the statute.

A criminal statute violates due process if it does not give adequate notice regarding the prohibited conduct or action. (*People v. Vandiver* (1971), 51 Ill. 2d 525, 530, 283 N.E.2d 681.) In many situations, however, it is not possible to precisely define statutory terminology, and there is no constitutional requirement that a statute be more specific than is possible under the circumstances. (See *People*

*v. Raby* (1968), 40 Ill. 2d 392, 396-97, 240 N.E.2d 595 (disorderly conduct), *cert. denied* (1969), 393 U.S. 1083,. 21 L. Ed. 2d 776, 89 S. Ct. 867; *People v. Caliendo* (1980), 84 Ill. App. 3d 987, 993, 405 N.E.2d 1133 (aggravated battery).) Under the United States and Illinois constitutions, statutes need only convey sufficiently definite warnings that can be understood when measured by common understanding and practices. (*People v. Caffrey* (1983), 97 Ill. 2d 526, 530, 455 N.E.2d 60; *People v. Dednam* (1973), 55 Ill. 2d 565, 567-68, 304 N.E.2d 627.) Due process calls for an interpretation of statutory language according to its ordinary and popularly understood meaning. (*People v. Schwartz* (1976), 64 Ill. 2d 275, 280, 356 N.E.2d 8, *cert. denied* (1977), 429 U.S. 1098, 51 L. Ed. 2d 545, 97 S. Ct. 1116; *People v. Khan* (1985), 136 Ill. App. 3d 754, 757, 483 N.E.2d 1030.) Further, the constitutionality of statutes is presumed. *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059.

In *People v. Khan* (1985), 136 Ill. App. 3d 754, 483 N.E.2d 1030, this court for the first time addressed the constitutionality of the criminal-housing-management statute and found that its language passed constitutional muster. The *Khan* court indicated:

"[N]either the enumeration of specific types of deterioration, the time period of this deterioration, nor the manner or extent to which inhabitants might be endangered are necessary for purposes of constitutionality here. Due process does not require such precision or 'laundry list' of conditions, since such a task would be impossible. [Citations.] It is clear that the legislature enacted the subject statute in order to prevent persons who control residential property from permitting it to deteriorate such that it posed a danger to the health and safety of residents. Since the enumeration of all such conditions was impractical, the legislature reasonably chose sufficiently broad language to encompass all such situations therein." 136 Ill. App. 3d 754, 757-58, 483 N.E.2d 1030.

Defendants maintain that *Khan* was improperly decided and that the supreme court's holding in *People v. Sholem* (1920), 294 Ill. 204, 128 N.E. 377, controls. The *Sholem* court held unconstitutional a statute which gave a State fire marshal the arbitrary power to fine a property owner because the owner's building was liable to catch fire "for want of proper repair, or by reason of age and dilapidated condition, or for any cause." 294 Ill. 204, 207, 128 N.E. 377.

■ The defendants in the instant case urge this court to find that the word "deteriorated" in the criminal-housing-management statute, like the word "dilapidated" in *Sholem*, is so vague that it

violates due process because potential defendants do not have fair warning of statutory violations. The defendants, however, misconstrue the *Sholem* holding, which is distinguishable from the case before us. The *Sholem* court did not find the statute unconstitutional because terms such as "dilapidated" and "for want of proper repair" were vague and overbroad. Rather, the concern of the court was that the determination of statutory violations was left to the discretion of a deputy fire marshal; the property owner's only recourse was an appeal to a fire marshal whose powers were the same as those of the deputy and were exercised in substantially the same manner. The owner's liability, therefore, was absolute if he failed to carry out the fire marshal's orders for which there was no judicial or administrative review. (*People v. Sholem* (1920), 294 Ill. 204, 212, 128 N.E. 377.) We believe that *Khan* was correctly decided and that the Illinois criminal-housing-management statute is constitutional.

■ Defendants next contend that their constitutional rights were violated because the informations charging them with criminal housing management and reckless conduct did not adequately inform them of the nature and elements of the offenses. They assert that the trial court thus erred in denying their motion to dismiss the informations and in arrest of judgment. Each defendant was charged in a two-count information which stated, in pertinent part:

Count I:

"The State's Attorney of Cook County *** states that on or about December 16, 1981 through January 5, 1983, in Cook County, Illinois, Harriet Handy/Intercoastal Realty, Inc., an Illinois corporation, committed the offense of criminal housing management in that she/it having personal management or control of residential real estate, to-wit: 905-13 East 61 Street, a/k/a 6101-03 South Drexel, Chicago, knowingly permitted by her/its gross carelessness or neglect the physical condition or facilities of the said residential real estate to become or remain so deteriorated that the health or safety of the inhabitants thereof was endangered, in violation of Chapter 38, Section 12—5.1, Illinois Revised Statutes ***."

Count II:

"The State's Attorney of Cook County *** states that on or about December 16, 1981 through January 5, 1983, Harriet Handy/Intercoastal Realty, Inc., an Illinois corporation, committed the offense of reckless conduct in that she/it having personal management or control of residential real

estate, to-wit: 905-13 East 61 Street, a/k/a 6101-03 South Drexel, Chicago, recklessly permitted the physical condition or facilities of the said residential real estate to become or remain so deteriorated that the bodily safety of the inhabitants thereof was endangered, in violation of Chapter 38, Section 12—5, Illinois Revised Statutes ***."

It generally is sufficient to charge an offense in the language of the statute where the language which defines the offense particularizes it in such a way so that "the accused is notified with reasonable certainty of the precise offense with which he is charged." (*People v. Isaacs* (1967), 37 Ill. 2d 205, 210, 226 N.E.2d 38.) In so determining, the court will consider "the plain and ordinary meaning of the words of the charging instrument [citation] as read and interpreted by a reasonable person." (*People v. Banks* (1979), 75 Ill. 2d 383, 392-93, 388 N.E.2d 1244.) The proper standard in reviewing a charging document is whether it fulfills the requirements of section 111—3(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 111—3(a)). (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171; *People v. Testa* (1983), 114 Ill. App. 3d 695, 449 N.E.2d 164.) Section 111—3(a) in pertinent part states:

"(a) A charge shall be in writing and allege the commission of an offense by:

(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the date and county of the offense as definitely as can be done." Ill. Rev. Stat. 1981, ch. 38, par. 111—3(a).

Defendants cite numerous cases for the proposition that where a statute is general and embraces a multiplicity of conduct, there must be sufficient facts pleaded to enable the defendant to prepare a defense and to plead a judgment of acquittal or conviction thereon in bar of a subsequent prosecution for the same offense. (See, *e.g.*, *People v. Isaacs* (1967), 37 Ill. 2d 205, 210, 226 N.E.2d 38; *People v. Cook County Distributors* (1944), 321 Ill. App. 394, 400, 53 N.E.2d 280.) Defendants rely on *People v. Green* (1938), 368 Ill. 242, 13 N.E.2d 278, in support of their argument that the language was insufficient to charge a statutory violation. In *Green*, the information alleged that the defendant drove " 'a vehicle upon a public highway of this State situated within the limits of the city of Chicago ***

with a wilful and wanton disregard for the safety of persons or property.' " (368 Ill. 242, 243-44, 13 N.E.2d 278.) The court found the information insufficient because the defendant could not tell what acts he had been charged with, whether it might have been driving while intoxicated, running a red light, driving too fast, or other conduct. Further, the information did not indicate where or when the offense occurred. 368 Ill. 242, 254-55, 13 N.E.2d 278.

In *People v. Isaacs* (1967), 37 Ill. 2d 205, 226 N.E.2d 38, the supreme court found insufficient an indictment drawn in the language of the statute. In that case, the statute prohibited State officers and employees "from becoming 'directly or indirectly' interested in certain State contracts." (37 Ill. 2d 205, 211, 226 N.E.2d 38.) The indictment emanating from the grand jury charged defendant with the acquisition of "a direct pecuniary interest." The court held that, without additional information, the defendant had no way of knowing with what he was charged and could be forced to go to trial unnecessarily if the particular interest considered by the grand jury was not that addressed by the statute. 37 Ill. 2d 205, 212-13, 226 N.E.2d 38.

■ Our examination of the informations in the instant case indicates that they are sufficient. Count I, charging criminal housing management, adequately fulfills the requirements of section 111—3(a) of the Code of Criminal Procedure and, further, it apprised the defendants with certainty of the offense charged. We believe that the defendants could glean from the charging document the accusations that, at a particular time and at a particular location, they permitted the property to become or remain deteriorated to a point where it endangered the occupants. It was not necessary to allege the precise details of the condition of the property in the charging instrument. (See *People v. Hughey* (1943), 382 Ill. 136, 139-40, 47 N.E.2d 77.) Any further information defendants needed to prepare their defense could be obtained through a bill of particulars (*People v. Meaderds* (1961), 21 Ill. 2d 145, 147-48, 171 N.E.2d 638, *cert. denied* (1961), 366 U.S. 939, 6 L. Ed. 2d 850, 81 S. Ct. 1667), which in fact they did request and receive.

■ Defendants also contend that count II of the information, alleging reckless conduct, is insufficient. The reckless-conduct statute provides:

"(a) A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful

or unlawful." (Ill. Rev. Stat. 1981, ch. 38, par. 12—5.

In *People v. Hayes* (1979), 75 Ill. App. 3d 822, 825, 394 N.E.2d 80, the court determined that the reckless-conduct statute was not sufficient alone in a charging instrument and that greater specificity of the alleged conduct was required. The instrument in *Hayes* mirrored the language of the statute in describing the offense allegedly committed. In contrast, the documents before us not only incorporate the statutory language but expand upon it by giving defendants precise notice of their alleged unlawful conduct. We therefore find that the informations were not defective, that defendants had adequate notice of the nature and elements of the alleged offense, and that the particularity of the instrument should have enabled defendants to prepare a defense. Additionally, defendants' assertion that a conviction on these charges would not preclude any subsequent prosecutions is erroneous. Sections 3—3(b) and 3—4(b)(1) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, pars. 3—3(b), 3—4(b)(1)), and the accompanying committee comments address such concerns and indicate that double jeopardy will not attach in this situation. See Ill. Ann. Stat., ch. 38, pars. 3—3(b), 3—4(b)(1), Committee Comments, at 197-203, 214-20 (Smith-Hurd 1972).

■ Defendants finally argue that the trial court erred in instructing the jury regarding the nature and elements of the offenses with which defendants were charged. They initially contend that the instructions referring to criminal housing management provided no standards or guidelines and that, therefore, the jury had to speculate as to whether the defendants were managing agents of the property, whether they permitted the premises to become or remain deteriorated, what was meant by the term "deterioration," and whose health or safety was endangered and how. The applicable instructions given by the trial court are:

People's instruction No. 21:

"A person commits the offense of criminal housing management when she, having personal management of residential real estate, as a managing agent of the residential real estate, knowingly permits by her gross carelessness or neglect the physical condition of the residential real estate to become or remain so deteriorated that the health or safety of any inhabitant is endangered."

People's instruction No. 22:

"To sustain the charge of criminal housing management, the State must prove the following propositions:

First: That the defendant had personal management of

the real estate as a managing agent; and

Second: That the nature of the real estate at 905-13 East 61st Street, also known as 6101-03 South Drexel, was residential, and

Third: That the defendant knowingly, by her gross carelessness or neglect permitted the real estate to become or remain so deteriorated that the health or safety of any inhabitant was endangered.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any of these propositions have not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Defendants maintain that we should follow *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63, in which the court reversed a defendant's conviction because the jury instructions did not specify the offense with which he was charged. They argue that, because the language of the criminal-housing-management statute is vague, a jury instruction in that language does not adequately describe for the jury the crime charged. We disagree. Our prior discussion establishes that the statute involved is not vague or overbroad but adequately sets forth the elements of the crime. There is no question that the instructions clearly delineated the offense of criminal housing management. We therefore find that People's instructions Nos. 21 and 22 did not leave the jury to speculation and conjecture.

■ Defendants also assert that, because the reckless-conduct statute has been held to require specificity beyond the statutory language to properly charge a defendant, jury instructions mirroring the language of the statute must suffer the same infirmity. The following three instructions regarding the reckless conduct charge were given over defendants' objections:

People's instruction No. 16:

"A person acts recklessly when she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

People's instruction No. 19:

"A person commits the offense of reckless conduct when she recklessly performs any act which endangers the bodily safety of another person."

People's instruction No. 20:

"To sustain the charge of reckless conduct, the State must prove the following proposition:

That the defendant recklessly performed an act which endangered the bodily safety of any inhabitant of 905-13 East 61st Street, also known as 6101-03 South Drexel.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that this proposition had not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Although instruction No. 19 sets forth the reckless-conduct statute, we find that instructions Nos. 16 and 20 effectively expand upon it and adequately define the terminology necessary to set forth the elements of the offense for the jury members. Further, Supreme Court Rule 451 (87 Ill. 2d R. 451(a)), provides that Illinois Pattern Jury Instructions (IPI) shall be used unless the court determines that they do not accurately state the law. The instructions provided by the State regarding reckless conduct and criminal housing management were IPI instructions. See IPI, Criminal, Nos. 5.01, 11.13, 11.14, 11.14A, 11.14B (2d ed. 1981) (People's instructions Nos. 16, 19, 20, 21, and 22, respectively).

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.