SALVATORE GIGLEO *vs.* DORFMAN AND KIMIAVSKY ET AL.

Third Judicial District, Bridgeport, April Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The removal of the lens of the plaintiff's left eye, following a com-
    pensable injury, reduced its vision to less than one tenth of
    normal vision without glasses, and caused a loss of binocular
    or stereoscopic vision—i.e., the ability to fuse in one plane
    the separate images formed in the macula of each eye. The
    eye, however, still retains field and color vision and, with glasses,
    has 20/30s vision, which represents a loss of only seven or eight
    per cent of normal vision, so that, in the event of a future injury
    to the other eye, he would not be blind and could follow a useful
    occupation. *Held:*
1. That the award for the specific injury to the plaintiff's eye was
    not governed by the terms of § 1 of Chapter 247 of the Public
    Acts of 1925, which provides, in part, for the "total and per-
    manent loss of sight in both eyes or the reduction to one tenth
    or less of normal vision with glasses"; nor, as the commissioner
    ruled, by the terms of subsection (g) of § 2, which provides "for
    the complete and permanent loss of sight in one eye or the re-
    duction in one eye to one tenth or less of normal vision with
    glasses"; but that it was to be measured by the further pro-
    vision of § 2, that "in case the injury shall consist of the loss
    of a substantial part of a member, resulting in a permanent
    partial loss of use of the member, or in case the injury results
    in a permanent partial loss of function, the commissioner may,
    in his discretion, in lieu of other compensation, award to the
    injured person such a proportion of the sum herein provided
    for total loss or loss of use of such member, or for incapacity
    or both, as shall represent the proportion of total loss or loss
    of use found to exist. . . . In case of an injury to any portion
    of the body referred to . . . the commissioner may, in his dis-
    cretion, in the manner hereinbefore provided, award compensa-
    tion for the proportionate loss or loss of use of the member of
    the body affected by such injury."
2. That the questions raised by the statutory requirement that the
    award be based upon the effect of the injury to the left eye only,
    were essentially medical and could only be answered in the
    light of expert evidence as to the extent to which each of the
    uses of this eye, including its part in giving to the plaintiff field,
    color and binocular vision, had been impaired.
3. That the possibility of the increased value of the injured eye, in

the event of a future injury to the other, was likewise to be considered in determining the amount of compensation.

4. That, since the record did not disclose with certainty the proportionate loss by which the award must be measured, the case must be returned to the commissioner for the introduction of further medical testimony.

Argued April 12th—decided July 25th, 1927.

APPEAL by the defendants from a finding and award of the compensation commissioner for the third district in favor of the plaintiff, taken to the Superior Court in New Haven County and tried to the court, *Wolfe, J.;* judgment dismissing the appeal and affirming the award, from which the defendants appealed. *Error and cause remanded with direction.*

*Arthur B. O'Keefe,* with whom, on the brief, was *Thomas F. Mitchell,* for the appellants (defendants).

No appearance for the appellee (plaintiff).

HAINES, J.   At the instance of the commissioner, a hearing was held on June 22d, 1926, upon an agreement made under the Workmen's Compensation Act by the claimant and respondents.   The commissioner found that the claimant received an injury arising out of and in the course of his employment on October 22d, 1925, his left eye being pierced by a nail.   As a result of the injury, a traumatic cataract developed in the eye and was removed by an operation, which also required the removal of the lens of the eye. It results that if the claimant attempts to use the two eyes together, with a glass, there is no fusing of the images, and the image seen by the one eye is of a different size from that seen by the other.   He consequently lacks binocular or stereoscopic vision.   If the uninjured eye is covered, the injured eye can be used with a glass, but still, of course, with a loss of binocular

Gigleo *v.* Dorfman and Kimiavsky.

or stereoscopic vision. Without the glass there is less than one tenth of normal vision in the injured eye.

The compensation provided by the agreement was $21 per week for the period of total incapacity and for the specific injury $21 per week for 88.4 weeks for the loss of eight-five per cent of the vision of the left eye.

The commissioner raised the single question of the amount to be paid for *specific* injury, and decided that the compensation for such injury should be $21 per week for one hundred and four weeks for the reduction in the injured eye to ten per cent or less of normal vision with glasses.

The appellant seeks certain changes in the finding, all relating to the medical conclusions. All the evidence upon this feature of the case was given by Dr. Berman and Dr. Blake, and is certified of record. Their testimony was not in any way contradicted. The commissioner found that by using a glass made for that purpose, the claimant could get 20/30s vision in the injured eye, which is a loss of about seven or eight per cent of its normal vision. The motion to correct seeks to have the meaning of the terms "20/30s vision" and "binocular vision" as shown by the medical testimony, added to the finding. Both physicians were properly qualified as experts. Their testimony was in full accord, and the respondents are entitled to have these subordinate facts included in the finding. The following addition is made: (6a) The terms 20/30s with reference to eye vision, means that the claimant, with correcting lenses, can read a line at twenty feet that he should normally read at thirty feet. (6c) Binocular vision means that the images found by each eye separately, overlap in the brain and are perceived as a single image. It is the ability to fuse in a plane, perception in each eye. There is an image formed in the

macula, the most sensitive and important part of the retina, in each eye, and if the eyes diverge, for example, if the individual has paralysis of one muscle, he perceives two images where there is only one, because he is not able to overlap the two images in the brain; he no longer has binocular vision.

Before the commissioner the respondents moved for a correction of the finding by striking out three paragraphs and adding others. In these three paragraphs it was found (a) that the claimant cannot use the uninjured eye and the injured eye with the glass at the same time; (b) that with any pair of glasses which gives the claimant more than one tenth of vision in the injured eye, he cannot use both eyes at the same time, so that he is at all times, for practical purposes, a one-eyed man; he must always dissociate the vision of the two eyes; (c) that the claimant has suffered a reduction in one eye to one tenth or less of normal vision with glasses. The commissioner's denial of this motion was sustained by the Superior Court.

As to the first two of these three paragraphs, (a) and (b), we think the request should be granted, and the following substituted as paragraphs eight and eleven: (8) While he cannot use the eyes together, he probably does associate the two eyes. He has 20/30s vision in the injured eye. Reading is a different matter; that is a matter of focus. (11) He has lost binocular or stereoscopic vision, but there are many people without injury who use both eyes singly and so do not have actual stereoscopic vision. This man probably uses both eyes, with things on one side, and for things on the other side of his field of vision, he uses them separately. The eye is not useless, for there are several other uses for the eye besides binocular vision, e.g. the field of vision—seeing objects from the side—and color vision. He can still use the eye for these

purposes. If he lost the injured eye he would still have the use of the uninjured one, and if he lost the uninjured one he would not be blind and could still follow a useful occupation.

The statement of Dr. Blake as to the discussion and conclusions at a meeting of certain members of the State Medical Association is not such a subordinate fact as to justify inclusion in the finding and the denial of this part of the motion was justified.

With these changes and additions to the finding, we are brought to the ultimate conclusion of fact, viz., the actual extent of the claimant's injury. The commissioner's conclusion is that the claimant has "suffered the reduction in one eye to one-tenth or less of normal vision with glasses." Respondents seek to have this paragraph stricken out and the following substituted: "The claimant has suffered the reduction in one eye of fifteen per cent of normal vision. In other words, the percentage of loss of vision is eighty-five per cent."

Our Act provides specific compensation for permanent incapacity, both total and partial. Total incapacity is defined and provided for in General Statutes, § 5351, as amended by the Public Acts of 1921, Chapter 306, § 6, and Public Acts of 1925, Chapter 247, § 1, providing, in part, as follows: "The following injuries of any person shall be considered as causing total incapacity and compensation shall be paid accordingly: (a) Total and permanent loss of sight in *both* eyes, or the reduction to one tenth or less of normal vision with glasses." It further makes provision for the loss of *both* feet, of *both* hands, of a foot and a hand, paralysis of *both* legs or arms or of a leg and arm, and for imbecility or insanity. Partial incapacity is defined and provided for in General Statutes, § 5352, as amended by the Public Acts of 1921, Chapter 306,

§ 7, and Public Acts of 1925, Chapter 247, § 2, providing, in part, as follows: "(g) for the complete and permanent loss of sight in *one* eye, or the reduction in one eye to one tenth or less of normal vision with glasses, one hundred and four weeks." Other provisions are for the loss or loss of use of *one* arm, of *one* hand, of *one* leg, of *one* foot, of hearing in one or both ears, of *one* thumb, each one of the fingers, etc. These statutes, by their phrasing, evince a clear intention on the part of the legislature to treat *both eyes* and their functions in General Statutes, § 5351, as amended, separate and apart from *each eye* and its functions in General Statutes, § 5352, as amended. In other words, the former relates to the total vision which the individual normally enjoys with both eyes as dual members, including binocular or stereoscopic vision, field vision, etc., while the second statute refers only to one eye alone and its functions.

Some aspects of the question were considered by us in *Reilley* v. *Carroll*, 104 Conn. 569, 134 Atl. 68. In that case claimant's left eye was injured, resulting in a reduction in vision in that eye to 20/30s with glasses. There was a pre-existing impairment of the vision of the right eye. The commissioner took account of the condition of the right eye, considering *both* eyes together, and concluded that the claimant had suffered a fifty per cent loss of "total vision," and made an award for $7.50 per week as representing the loss of one half the total vision.

We held that to be erroneous, and that General Statutes, § 5351, as amended, could not be considered in conjunction with General Statutes, § 5352, as amended, for the purposes of the award; that General Statutes, § 5351, as amended, which provided only for *total* incapacity, had no reference to the injury to one eye alone, and that every specific injury referred to in

General Statutes, § 5351, as amended, relates to the "loss of, or of the use of, *dual members*"; and that as the injury involved one eye only, the case came under the provisions of General Statutes, § 5352, as amended, which provided for *partial* incapacity. We further said that finding a reduction in vision in the left eye to 20/30s with glasses, "is not a finding of a complete and permanent loss of sight in the left eye, or a reduction in the left eye to one tenth or less of normal vision with glasses. He found that the injury in question impaired the vision of the left eye and that the result of that impairment in connection with the pre-existing impairment of the vision of the right eye has resulted in a fifty per cent loss of total vision. Neither § 5351 as amended, nor § 5352 as amended, specifically provides a rate of compensation for a fractional impairment of total vision." A reduction in *one eye* to 20/30s creates a *partial incapacity,* and compensation must be sought under General Statutes, § 5352, as amended. It so happens that the impairment of the eye is the same in the present case as in the *Reilley* case, viz., to 20/30s. In neither case is it proper to consider the function of the dual members together and to thus determine the extent of loss of *total vision.* The finding clearly shows that the claimant now has more than one tenth of normal vision in the injured eye, if he uses a glass. The situation therefore, in the present case, is this: Compensation cannot be awarded to the claimant under General Statutes, § 5351, as amended, and since there is not a complete loss of sight in the injured eye, and the vision in that eye is not reduced to one tenth or less of normal vision *with* glasses, the specific provision made under subsection (g) in General Statutes, § 5352, as amended, is also inapplicable.

The commissioner found in this case that the claim-

ant now has less than one tenth of normal vision in the injured eye, "without the use of glasses," and gave compensation for one hundred and four weeks. Only the left eye being injured, the award could not be made under General Statutes, § 5351, as amended, for total incapacity, but must be made under General Statutes, § 5352, as amended, for partial incapacity. The commissioner's award is apparently made on a finding that the claimant has less than one tenth of normal vision in that eye, based upon the use *without* glasses, and the further finding that the claimant has suffered a reduction in one eye to one tenth or less of normal vision, *with* glasses.

It is clear that compensation in this case cannot be awarded under (g) above referred to, but General Statutes, § 5352, as amended, further provides: "In case the injury shall consist of the loss of a substantial part of a member resulting in a permanent partial loss of use of the member, or in case the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured person such a proportion of the sum herein provided for total loss or loss of use of such members or for incapacity or both as shall represent the proportion of total loss or loss of use found to exist. . . . In case of an injury to any portion of the body referred to . . . the commissioner may, in his discretion, in the manner hereinbefore provided, award compensation for the proportionate loss or loss of use of the member of the body affected by such injury." As stated by us in the *Reilley* case, these provisions have no reference to General Statutes, § 5351, as amended, and must be construed with sole reference to General Statutes, § 5352, as amended.

In the instant case, the parties provided in their agreement for $21 per week for the total incapacity,

not to exceed the period fixed by law, and this the commissioner approved. The hearing and decision which followed had reference only to the "specific indemnity," that is, compensation for the actual injury to the eye as a body member. The loss of the lens was a "loss of a substantial part" of the eye, within the meaning of General Statutes, § 5352, as amended by Public Acts of 1925, Chap. 247, § 2, above quoted. An award in this case may therefore properly be made within the terms of that provision, and based upon a correct finding of the operative facts.

The seemingly conflicting decisions in New York and Massachusetts to which we have been referred, must be considered in the light of the particular provisions of the respective statutes of those States. An examination of the New York statute shows that compensation was awarded in *Frings* v. *Pierce-Arrow Motor Car Co.,* 169 N. Y. Supp. 309, on the theory of disability to work and not as indemnity for the loss of a member or its use, or its physical impairment as such. See also *Marhoffer* v. *Marhoffer,* 220 N. Y. 543, 546, 116 N. E. 379; *Grammici* v. *Zinn,* 219 N. Y. 322, 325, 114 N. E. 397; *Kanzar* v. *Acorn Mfg. Co.,* 219 N. Y. 326, 114 N. E. 398. This case, therefore, is not of great value in an inquiry which is concerned only with specific indemnity. The Massachusetts statute more closely resembles our own. In *O'Brien's Case,* 228 Mass. 211, 117 N. E. 1, it was held that, in determining whether there was a reduction of vision in the injured eye to one tenth of normal vision with glasses, there should be taken into account the vision of the two eyes together, or binocular vision. The brevity of the opinion does not enable us to learn the exact reasoning upon which this conclusion was based, but it is stated (p. 213) that it obviated "the unreasonable result of allowing compensation for the loss of an eye, but none for an

injury that rendered the eye worse than useless." We certainly cannot take the view, in the pending case, that the eye was worse than useless. Thus applied, it would lead to the still more unreasonable result that this claimant, with a defective eye which can, even though the uninjured eye were lost, still serve him adequately in the ordinary affairs of life, which has color vision and field vision and ninety-two per cent of normal vision in itself, should receive the same compensation as though his eye had been removed entirely, in which event, the loss of the other would make him a blind man for life.

The requirement that the compensation be based upon the injury to one eye only, raises a question essentially medical, and it is certainly not free from difficulty. The functions of one eye must be differentiated from those of the two eyes acting in conjunction. The injury is to one eye only, and it becomes necessary, our statute provisions being what they are, to define the functions of that one eye, and estimate the loss, or the extent of the loss of each of these uses, which the injury has caused. Among these uses there should be considered the part which one eye plays in giving field vision, color vision and binocular vision, which the claimant enjoyed before the injury. The commissioner's conclusion will necessarily be based upon expert medical evidence, and that evidence should be given with this distinction clearly in mind. There are certain conditions which naturally have their bearing upon the result, such as the liability that the other eye may sometime be lost, rendering the value of the defective eye something quite different from its present value. The record does not enable us to know with certainty what this proportionate loss would be, and we think the commissioner should require the introduction of further medical testimony upon this point. A

question of this nature should be presented with the greatest possible care, to the end that the commissioner may be able to find with clearness, and in sufficient detail, the facts from the medical opinions, together with the grounds upon which the opinions rest. The question is obviously not without difficulty, but we think the construction which we have given to our statutes accomplishes a just result and conforms to what we deem to be the legislative intent.

There is error; the Superior Court is directed to sustain the appeal and remand the case to the commissioner to be determined by him under the provisions of General Statutes, § 5352, as amended, in accordance with this opinion.

In this opinion the other judges concurred.