EDNA MAE KEENLY and Others, Plaintiffs, *v.* CORA B. McCARTY, Defendant.

Supreme Court, Onondaga County, July 19, 1930.

*George W. O'Brien*, for the plaintiffs.

*Cohen & Levey*, for the defendant.

SMITH, E. N., J. The defendant is the owner of premises known as No. 1913 James street, in the city of Syracuse, N. Y., and the plaintiffs are owners of premises adjoining the premises of the defendant. The premises involved herein are within what is known as Class A residential district under the Zoning Ordinance of the city, which in general prohibits the use of premises within the district for business purposes. This Zoning Ordinance went into effect in or about January, 1922.

Prior to January, 1922, and for a number of years subsequent

thereto, the premises now owned by the defendant were owned and occupied by a Mrs. Owens, down to the time of her death in July, 1925. Upon the premises is a large dwelling house, the first floor of which Mrs. Owens used as a home for herself and family; the second floor was occupied by boarders who were for the most part elderly or retired people, who found the accommodations offered by Mrs. Owens comfortable and the surroundings pleasant; Mrs. Owens was a nurse, and as part of the services rendered to these people Mrs. Owens furnished the attendance of a nurse, and for board, lodging and attendance she received from each about twenty-five dollars a week; there were about seven of such occupants of the second floor of the building; these parties stayed with her for long periods of time, some of them for several years. She did not furnish medical attendance, but each had his or her own physician. It was not a hospital in any sense; it might be called a boarding house or private home for elderly people; it served a useful purpose, and the use to which it was put caused no annoyance to the neighborhood during all the years that Mrs. Owens occupied and used the premises for such purposes. After Mrs. Owens' death the property was used for a short period of time by a Mrs. Sharpe for similar purposes, and in 1926 she leased the premises to the defendant with an option to purchase, and the latter purchased the premises in the year 1927.

Since the occupancy of the premises by the defendant the character of the use of the premises has been radically changed and bears little resemblance to that which obtained during the ownership of Mrs. Owens. The use has been extended so that the capacity of the house is now twenty-six patients. Alcoholic and drug cases are taken; the police authorities of the city of Syracuse have sent such cases there; cases of people suffering from delirium tremens are accepted; attempts have been made by the defendant to use the building as a maternity hospital, and she was convicted on account of such unauthorized use; people of deranged minds have been received; patients have committed suicide therein; little care has been exercised to keep the occupants of the place within doors; they have been allowed to roam about the premises and in the street in various conditions of attire; outcries of those housed therein have created disturbances in the neighborhood; several rooms have been set apart (with windows barred or covered with heavy screening) for the use of patients more or less violent. Without attempting to enumerate the many instances in the record showing a difference of use, sufficient appears therein to satisfy the court that the occupancy and use of the premises, with minor exceptions, are radically different from the occupancy and use of the premises by Mrs. Owens.

No question is raised here that under the Zoning Ordinance a continuance of the use of the premises for the purposes for which it had been used by Mrs. Owens would have formed no basis for this action. The mere fact that more people of a like type were housed there than Mrs. Owens housed would have given no basis for this action. The action is founded upon the proposition that the use and occupancy have been radically changed; and this must be found to be a fact in the case.

The complaint alleges that the plaintiffs are suffering from irreparable damage and that there is no adequate remedy at law.

The plaintiffs seek to secure relief upon two grounds: (1) That the defendant has violated the Zoning Ordinance of the city in that she has changed the character of the use from that which obtained at the time when the ordinance went into effect, and (2) that the practices obtaining and the character of the use of the premises by the defendant constitute a nuisance at common law.

As to the first ground of the action, it being a fact that the defendant has violated the provisions of the Zoning Ordinance, the question arises as to whether or not the plaintiffs may invoke the power of a court of equity to obtain by injunction the relief sought. I am of the oinion that they cannot. Zoning ordinances have now been generally sustained, when properly prepared and adopted, and their constitutionality when so prepared cannot now be questioned. They constitute a radical invasion of the preconceived notions of rights to use one's property for such lawful business purposes as he may see fit, and constitute a departure from and an invasion of common-law rights in reference to property; but the result of their proper application and operation, so far as future construction and use are concerned, is so beneficial to property values and to the peace, comfort and welfare of the people that they have been sustained as not violative of any constitutional right, although their origin is foreign to the common law. These ordinances are enacted by municipalities under general authority granted by the Legislature, and usually the ordinance provides a method for its own enforcement; the ordinance now under consideration provides that " any person or corporation that violates or aids or assists in violating this ordinance or any of the rules, regulations, prohibitions or restrictions hereinabove set forth shall be guilty of a misdemeanor and on conviction thereof shall be fined not more than one hundred and fifty dollars." I have already voiced my views upon the subject of the right of an individual to call upon a court of equity to enforce zoning ordinances by injunction and have intimated that no such power exists. (*Owid* v. *Moushaty*, 125 Misc. 535.) As early as the case of *Mayor* v. *Thorne* (7 Paige, 261) it was

held: " It is no part of the business of this court [a court of equity] to enforce the penal laws of the state or the bylaws of a corporation by injunction, unless the act sought to be restrained is a nuisance." In restating this view Mr. Justice Cullen, in the case of *Village of New Rochelle* v. *Lang* (75 Hun, 608), said: " Even if the act were a nuisance the remedy was by indictment or in equity only at the suit of the people or of some private person who alleged special damages." The mere adoption of a zoning ordinance does not make that a nuisance which before its adoption was not a nuisance. It has been held that " the injunctive power of this court is therefore not available in behalf of a private individual, upon the theory that the business use of a building in a residence district established under the zoning statute constitutes a nuisance." (*Whitridge* v. *Park*, 100 Misc. 367, at p. 371; affd., 179 App. Div. 884.) My attention has been called to no case which holds to the contrary, unless it be *Rice* v. *Van Vranken* (225 App. Div. 179). The case of *Whitridge* v. *Park* (*supra*) lays down the better rule.

The defendant in the instant case has so altered the manner and the character of the use as to have violated the provisions of the Zoning Ordinance. The remedies for such violation are provided in the ordinance itself.

The plaintiffs have at least two remedies at law: (1) To proceed by information in a proper court against the defendant for violating the Zoning Ordinance; (2) after demand for its enforcement by the proper municipal authorities, and their failure to act, to make application for an order of peremptory mandamus directing the proper authorities to enforce the provisions of the Zoning Ordinance. (*Matter of Collins* v. *Moore*, 125 Misc. 777.) Even if the court had power to grant equitable relief, before invoking the equitable powers of the court the plaintiffs should allege and prove demand upon the municipal authorities to enforce the Zoning Ordinance. This they have failed to do.

The plaintiffs acquired no proprietary right by reason of the adoption of the Zoning Ordinance. They would have had no cause of action against the city of Syracuse if it should repeal the ordinance. It is not the purpose or design of such ordinances to place a district in a straitjacket in reference to its growth and development, but rather to give direction to and to some extent control the course of development for residential, industrial and business purposes. It often happens in the growth of cities that the pressure of the business demand is so great as to require modification of zoning ordinances so as to allow an extension of a business district, and that part of a residential district adjoining a business district becomes so valuable for business purposes and of such little value

for residential purposes that it would amount to a confiscation of property not to extend the limits of a business district. Zoning ordinances were not designed to destroy values, but rather to create and maintain them; to prevent further intrusion by business in the essentially residential districts, and to localize the development not only of mercantile but of manufacturing business. The handling of zoning ordinances is essentially a matter of municipal administration. Zones are created by the municipality, and their administration should be under the control of the municipality. The proceeding by mandamus gives the municipality opportunity to be heard, which would not be the case if every individual in a zone should have the right to invoke the equitable powers of the court. Although zoning ordinances are peculiar, comparatively new to our system of government, and create novel situations, nevertheless it seems to me to be the sounder judicial policy to adhere to principles· that have heretofore obtained — that the equitable powers of the court may not be invoked in aid of a penal statute or ordinance, and that parties should be left to their rights at law under the ordinance or to their rights if any under the common law of nuisance.

If it be once established that the acts of the defendant constitute a nuisance, irrespective of the provisions of the Zoning Ordinance, if a private nuisance without·and if a public nuisance with proof of special damage, the plaintiffs would be entitled to the relief sought.

And this brings us to an examination of the second basis upon which the plaintiffs rest their prayer for injunctive relief. Does the conduct of the defendant in the maintenance of an institution of the type which she is maintaining or the manner in which it is maintained constitute a nuisance?

The plaintiffs are owners of adjoining property and suffer the burden of the annoyances created or permitted by the defendant, and upon adequate proof they do suffer special damages not alone by reason of deterioration of property values but by reason of annoyances and disturbances of their peace and comfort which place them in a position to maintain the action provided a nuisance, public or private, is being maintained by the defendant. At the foundation of the law of nuisance lies the maxim, " *Sic utere tuo ut non alienum lædas.*" It is conceded in the case and is clearly established by the record that there was nothing in the use of the property by Mrs. Owens which created a nuisance. To maintain a boarding house or a hospital or a restaurant or any other legitimate business does not, in and of itself, constitute a nuisance. So that in this instance the maintenance of a place where people ill from any disease might lawfully be boarded or attended would not of itself

constitute a nuisance; and so, if there be a question of nuisance here, it must be found not in the use itself to which the premises have been put, but in the manner of the use.

As is evidenced by the development of zoning laws and ordinances adopted pursuant thereto, there is growing up a broader view in reference to the duty which one owes to his neighbor in the use of his own property, and the view that what may not be a nuisance in one place may become a nuisance in another. (*Andrews* v. *Perry*, 127 Misc. 320.) It is also true that a lawful enterprise may be conducted in such a manner as to create a nuisance; and that is the situation with which we are here confronted. Apart from the Zoning Ordinance and its prohibitions, the defendant is conducting a lawful business, not a nuisance in itself; but the manner in which she has conducted this business has caused such grave annoyances to and disturbances of her neighbors as to cause a nuisance. This section is essentially a residential district; the neighbors of the defendant have delightful homes, in which they take pride and in which they properly seek peace and quiet; they have been disturbed by police patrol wagons bringing up drunks at all hours of the day and night, by the screams and yells of patients demented at the time, either because suffering from delirium tremens or because of the effects of addiction to the use of drugs; the patients of this institution have been allowed upon the streets in improper attire; the place has been conducted with little or no regard for the sensibilities of neighbors. Its quality as a nuisance is enhanced by the fact that it is located in a residential district. The difficulty is not in declaring a nuisance but in establishing a formula under which a lawful business may be conducted without creating a nuisance. No public institution for the care of the sick would be conducted in such a manner as is the defendant's place. She has no right under the law to maintain a maternity hospital; she has no license for such purpose; she has no right under the law to receive insane people as patients, and in this neighborhood she has no right to allow conditions of annoyance to exist or continue. The action of the municipal authorities, as represented by the police, in bringing intoxicated persons to this place constitutes on their part a disregard of the Zoning Ordinance of the city and of the rights of the plaintiffs as citizens. Such conduct is reprehensible. Were the conduct and attitude of the defendant otherwise than it is, we might not say here that the defendant could not receive, under proper conditions, people who came to her as patients suffering from alcoholism; but we can say that this place may not be used as a dumping ground for the human derelicts of the streets — even when the police authorities do the dumping.

Before this defendant occupied the premises in question, the use of it as Mrs. Owens used it would not be enjoined, for she created no nuisance; and the use of it in like manner by this defendant would not be enjoined, because she would have created no nuisance by such use. But the defendant's disregard of the reasonable rights of her neighbors to the enjoyment of their premises in peace and quiet is shown by ample evidence in the case; and such has been her manner of conducting the place that it becomes difficult to differentiate between what might under proper administration be lawful and what might create a nuisance; but, in view of the evidence in the case and of the attitude of this defendant, it is difficult to draw a line where lawfulness begins and where it ends.

In view of the character of the neighborhood and in view of the persistent conduct of the defendant after numerous warnings by the police authorities of the city, there is no occasion for this court, considering all the equities, to split hairs.

The plaintiffs are entitled to an injunction restraining the defendant from receiving alcoholic or drug addicts or insane or demented people as patients; from suffering those who may lawfully be patients to go about the premises or upon the streets in the neighborhood improperly attired, and from keeping patients who are not under control in respect of outcries or screaming.

The plaintiffs will prepare findings of fact and conclusions of law in accordance herewith, to be settled unless agreed to upon two days' notice, together with form of the judgment to be entered in accordance therewith, with costs to the plaintiffs.

Judgment accordingly.