10

MATILDA L. CORDTS, Individually and as Executrix, etc., of JOHN N. CORDTS, Deceased, and Others, Plaintiffs, *v.* THE HUTTON COMPANY and Another, Defendants.

Supreme Court, Ulster County, November 9, 1932.

*Clark & Davis* [*William D. Cunningham* of counsel], for the plaintiffs.

*Harry H. Fleming*, for the defendants.

FOSTER, J. This is an action in which the plaintiffs seek to enjoin the defendants from removing sand and clay from certain properties situated in the city of Kingston, N. Y., and to prevent the defendants from using such premises for purposes other than residential. Injunctive relief is sought upon the theory and claim that such user is in violation of two zoning ordinances of the city of Kingston, enacted, respectively, on February 3, 1925, and August 8, 1928.

Plaintiffs are the owners of an estate within the limits of the city, about six acres in extent, upon which are situated a main residence building, a four-car garage and a chauffeur's cottage. The residence building is a brick structure of imposing proportions, and, although built in 1873 by an ancestor of some of the plaintiffs, contains all modern improvements. The surrounding grounds are spacious, attractively shrubbed and decorated, and kept in excellent condition. From the premises, views, more or less extensive, may be had of the Hudson river. It is, beyond question, a property both unique and valuable, and there is no residential property in the immediate neighborhood comparable to it in extent or value.

The premises of the defendant Hutton Company are immediately to the north of the plaintiffs' property and extend from the Hudson

river west to the street or road called Locust avenue. The premises of the defendant Terry Brothers Company are immediately north of the Hutton property and also extend in part from the Hudson river west to Locust avenue. Prior to 1915 the properties of the defendants were bounded on the west by the Cantine patent line, which is some distance east of their present westerly boundary. The lands of the defendants between the Cantine patent line and the Hudson river are not involved in this controversy.

The land west of the Cantine patent line was formerly owned by the Newark Lime and Cement Company. On May 6, 1915, the Terry Brothers Company purchased sixteen acres of this tract, and the remaining part, which was immediately adjacent to the Hutton property on the east and the plaintiffs' property to the south, and which comprised something over fifteen acres, was purchased by the Hutton Company on October 1, 1925. It is as to these parcels purchased from the Newark Lime and Cement Company that the plaintiffs seek to enjoin the defendants from further excavations. The defendant companies, and their predecessors, have been engaged in the manufacture of brick for many years. The original Hutton property was devoted to that use as far back as 1865 and even prior thereto. It may also be observed in connection with this use that J. N. Cordts, owner of the plaintiffs' property at the time the residence was erected thereon in 1873, was connected with the operation of the Hutton brick yard and his interest therein continued over a period of twenty years. During the years of their operation in the manufacture of brick the defendant companies have used the clay and sand, which is particularly suitable for such purpose, from their lands immediately west of their plants on the river front. In the course of time their excavations crept westward until now they have reached approximately the Cantine line, formerly the westerly boundary of their properties. To continue they must cut into the lands purchased by them from the Newark Lime and Cement Company and this will bring them into conflict with the zoning regulations of the city of Kingston.

The first zoning ordinance upon which the plaintiffs rely was adopted on February 3, 1925, and took effect upon the filing of proof of publication on April 13, 1925. Briefly, the ordinance divided the city into residential, business and manufacturing districts, and specified the particular uses to which the property in each district might be devoted. To identify these districts a zoning map was adopted on which it was attempted to mark out the boundaries of the various districts by colored sections drawn to scale. These sections were placed upon the map without reference to property lines or buildings and without surveys of any kind.

Upon measurements by scale it is shown that the defendants' properties, purchased from the Newark Lime and Cement Company, were wholly within a residential district under this ordinance.

In the year 1928 a new ordinance was enacted which superseded the prior one. The districts were changed somewhat, and various matters by way of enforcement were provided for, but the general scheme remained the same. A new map was adopted, prepared in connection with ward maps of the city, upon which property lines were indicated and buildings located. While the industrial districts were changed somewhat, the properties involved in this action still remain wholly within a residential district. The plaintiffs bring this action upon the theory that their property is being injured, or subject to threat of being injured, by a violation of both zoning ordinances, and hence that they have an interest sufficient to maintain the action. This position is sound. It is obvious that further excavations within the prohibited area will diminish to some extent the value of the plaintiffs' property. Under such circumstances their interest is sufficient to maintain an action. (*Rice* v. *Van Vranken*, 225 App. Div. 179; affd., 255 N. Y. 541.)

The defendants deny that either ordinance in question is valid and in conformity with the statute, and set up, among others, these affirmative defenses: That the defendants' use is a non-conforming one which is not prohibited; and that both ordinances, in so far as they may apply to their properties, are so unreasonable and arbitrary as to be unconstitutional.

Authority for the enactment of zoning ordinances by cities is found in the General City Law (§ 20, subd. 25). That section provides that cities shall have the power " to regulate and restrict the location of trades and industries and the location of buildings, designed for specified uses, and for said purposes to divide the city into districts and to prescribe for each such district the trades and industries that shall be excluded or subjected to special regulation and the uses for which buildings may not be erected or altered. Such regulations shall be designed to promote the public health, safety and general welfare and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development, in accord with a well considered plan."

The ordinance of 1925 is attacked upon the basis that it was not in accord with a well-considered plan in that it did not describe the districts referred to therein as residential, business and manufacturing districts, and that the map accompanying the same did not reasonably locate such districts. The map was a part of the

ordinance and furnished the only means by which the districts could be identified and their boundaries ascertained. The method used was to plot in upon a comparatively small map certain spaces in color to the scale of 800 feet to an inch, without regard to whether the division lines cut through dwelling houses and other buildings, industrial establishments and other properties. Evidence as to the division of other properties by this method was objected to, but the evidence was properly admitted since such method affected the defendants' property in the same manner, the difference being only in degree. Clearly, such a method was haphazard, to say the least, and it may be well doubted whether it met the test required by statute.

As to these properties the plaintiffs urge that the same situation was presented in the case of *Village of Euclid* v. *Ambler Realty Co.* (272 U. S. 365), and present such case as an authority for the proposition that it is not unreasonable to divide a parcel into several diverse districts merely because that parcel happens to be owned by one individual. That statement as a general proposition is clearly logical, although the case cited did not pass specifically upon that question. The opinion clearly indicates that each case must be decided upon its own facts when any part of an ordinance is attacked as being unreasonable in its application to a particular property.

Whatever may be the rule as to vacant parcels of land not devoted to or immediately available for any particular use, the premises involved here must be placed in a different category. They are located adjacent to industrial plants in actual operation and are patently valuable only for use in connection with the further operation of such plants. A method of division which separates these properties, and which, in its general application, separates properties of all kinds without regard to lines, buildings or even uses, is not a reasonable regulation within the meaning of the statute.

Since the ordinance of 1925 was superseded by the ordinance of 1928, and this question is not raised as to the map adopted in 1928, this holding is only important on the question of a non-conforming use.

The ordinance of 1928 permits the continuance of a non-conforming use existing at the time of the passage of the ordinance: Section 3 of that ordinance provides in part as follows: " However, any non-conforming use existing at the time of the passage of this ordinance may be continued or changed to another non-conforming use which is no more harmful or objectionable in the opinion of the zoning board, hereinafter provided for, provided that the building or premises involved shall not be structurally altered or enlarged,

unless the use thereof is to be changed to a use permitted in the district."

It is contended that further excavations would not constitute a non-conforming use because such excavations would necessarily involve structural alterations of the premises. It is also contended that the ordinance contains no provisions authorizing the continuance of a non-conforming use of land alone. From the language used it is doubtful whether that part of the ordinance which deals with the continuance of a non-conforming use was ever intended to apply to the situation presented here. It would appear that the possibility of such a situation was completely overlooked. However that may be, if the language used is taken at its face value, and nothing read into it by way of implication or otherwise, further excavations are within the prohibition as being structural changes. This conclusion is not at all helpful to the plaintiffs' cause, and if correct, it merely furnishes additional proof that the ordinance is unreasonable in failing to recognize the vested interests of the defendants.

The most important issue in the case, however, is raised by the assertion of the defendants that the premises in question, although zoned solely for residential purposes, are not reasonably suitable for such use. If this is true, then such ordinance, in so far as this property is concerned, attempts that which is tantamount to confiscation and infringes upon the constitutional rights of the defendants, and is not made " with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development, in accord with a well considered plan." The general principle of zoning has been repeatedly upheld as a valid exercise of police power, but it has also been held that the burden incident to the exercise of such power should be distributed equally as far as possible, and that where a plan, or a part thereof, is unreasonable and unnecessary to the general scheme or purpose as a whole, and approaches the point where an owner is deprived of any beneficial or profitable use of his property, the courts may afford relief. (*Eaton* v. *Sweeney*, 257 N. Y. 176.) The evidence as a whole indicates that such is the precise situation presented here.

The district, using that term in the broadest sense, in which the disputed premises are situated, has been a manufacturing district for at least over fifty years. Whatever residential development there has been immediately adjacent to this property has been almost completely in connection with the industries there established. The residential district to the south is not affected by an

industrial use of the premises in question, nor is that part of the ordinance dealing with the property of the defendants necessary to preserve the character of such district. Moreover, these premises in question are close to and extend beyond the northerly boundary of the city of Kingston, and are the only premises extending in that direction which are adversely affected by the provisions of the zoning ordinance. This fact alone, of course, would not justify a conclusion that the city did not possess power to exclude therefrom industrial activities, but it may be considered in connection with the question of whether the premises are suitable for residential purposes, and also whether the restriction as to them is unreasonable and unnecessary to the preservation of the zoning scheme as a whole. Certainly, mere esthetic considerations alone would not justify the restriction imposed. (*Dowsey* v. *Village of Kensington*, 257 N. Y. 221.)

It is of course true that the judgment of the city's legislative body is not to be lightly disregarded or thrown aside, and if the matter is merely one of judgment exercised upon a debatable proposition, the court may not justly substitute its judgment for that of the legislative body. This rule, however, has its limitations in the further rule that the test of reasonableness must be applied. Just where the line may be drawn it is difficult to say, and no authority has been brought to my attention which presumes to determine the precise facts which may move a court in interfere. Of course, residential buildings may be erected anywhere provided there is ground sufficient to support them, but this possibility does not meet the test of reasonableness. All pertinent factors affecting the premises involved must be considered in determining whether the premises are reasonably suitable for residential purposes. A conclusion that the premises involved here are patently unsuitable for residential purposes is sustained by the evidence as to their physical characteristics, their immediate proximity to the brick plants of the defendants, and the character of the locality as evidenced by its history over a long period of years. The premises front upon yawning excavations which are between them and the plants of the defendants, and beyond are all of the paraphernalia used in the manufacture of bricks. Upon what reasonable basis can it be urged that such premises are desirable and suitable for residential purposes? Only upon the assumption that the defendants will cease to manufacture brick in their present plants or remove their brick yards to some other place, and there is nothing in the record to justify this assumption. The residential property of the plaintiffs cannot be considered as proof that this district is valuable

for residential purposes. This property was developed and improved by one who was actually engaged in the brick manufacturing business himself, and thus had an interest in the locality not shared by the general public. There is no evidence to indicate that the premises in question were ever considered suitable for residential purposes but there is ample proof that they were long held and considered as available for industrial use. They form an obvious and natural industrial adjunct to the primary properties of the defendants and reason cannot deny their peculiar and overwhelming suitability for that purpose. The common council apparently ignored these factors, and thus its action with relation to the restriction complained of appears unreasonable and arbitrary. Upon the basis of these considerations I draw the conclusion that such restriction was a violation of the constitutional rights of the defendants, and further that it was not made in accordance with the statute.

For the reasons herein set forth the defendants may have judgment dismissing the complaint, with one bill of costs. Proposed findings may be submitted within ten days after the receipt of this memorandum.