**WELTON et al. v. 40 EAST OAK ST. BLDG. CORPORATION et al.**

No. 5089.

Circuit Court of Appeals, Seventh Circuit.
April 9, 1934.

Rehearing Denied May 17, 1934.

Harold Beacom, James H. Cartwright, and Arthur D. Welton, Jr., all of Chicago, Ill., for appellants.

Walter H. Eckert and Chilton P. Wilson, both of Chicago, Ill., for appellee receiver.

Horace A. Young, Carroll A. Teller, John R. Nicholson, and James I. Johnson, all of Chicago, Ill., for other appellees.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge.

This controversy is between the corporate owner of a twenty story apartment building (appellee and its receiver and preferred stockholders' committee) and the owners of two adjoining four story apartment buildings (appellants).

The history of the litigation in the Federal court begins with the receivership proceedings. The Chicago Title and Trust Company's suit to foreclose a mortgage was consolidated with the receivership suit, as was the instant civil suit which sought a mandatory injunction to compel the reconstruction of appellees' large building to conform to the requirements of the zoning ordinance of the City of Chicago. The District Court denied the prayer for injunction, holding that without a showing of special damage an individual has no right to have the zoning ordinance

enforced. It also held, in granting or refusing relief, that the courts should balance equities and, where the defendant has acted in good faith and the granting of the injunction will cause great loss to defendant and little benefit to plaintiff, deny injunctive relief.

Appellants' property backed upon the offending building, known as "40 East Oak Street," being separated therefrom by an alley, 16 feet wide. On March 12, 1928, application for a permit was made to the Commissioner of Buildings, which application was denied the same day. An appeal was taken on March 14 to the Zoning Board of Appeals, which held a hearing on March 20, at which appellants appeared and objected. On March 27, the Board granted the application for the permit, and it was issued the next day by the Commissioner. On April 26, appellants filed a petition in the Superior Court of Cook County for certiorari. The petition was granted, but after hearing the Superior Court quashed the writ on July 2. An appeal was taken to the Supreme Court of Illinois. That court held (344 Ill. 82, 176 N. E. 333) on October 19, 1929, that the part of section 3 of the zoning statute (Smith-Hurd Rev. St. 1927, c. 24, § 68) which gave the Zoning Board power to vary the requirements of the zoning act was unconstitutional. Petitions for rehearing were filed by appellees, and final disposition of the appeal was postponed until April, 1931. Notwithstanding the litigation, the erection of the building was begun at once and was completed December 20, 1928. All legal action by appellants was taken within the time allowed by law.

The corporate structure of the appellee building corporation included a bond issue of $1,200,000, with the Chicago Title and Trust Company as trustee of the mortgage, and six thousand shares of preferred stock of $100 par value.

The parties stipulated that the bondholders and stockholders had no actual knowledge of the alleged violation of the zoning ordinance. The court found that the building corporation acted in good faith, reasonably relying on the state statute and reasonably believing that the building did not violate the state statute. It also found that the erection of that portion of the building which was in violation of the zoning ordinance did not increase the hazard of fire or insurance rates on appellees' buildings nor cause them to suffer any material diminution of light and air such as could be measured in damages. It found that the loss which would result from destruction and reconstruction of the building known as 40 East Oak Street would be $343,837.07, of which $129,587.07 was for rebuilding; that appellants did not offer any evidence of any benefit which they would receive if the illegal portion of the building were removed.

The building in question violates the act in that it does not have a one foot set back for every nine feet it rises above a height of 72 feet (Sec. 19, Par. c, of the Zoning Act). The set backs in this case should have been made on the alley side of the building.

Appellees called physicists and realty men who testified to the effect of the illegal structure on appellants' property. The physicists testified that the increase of light which would be received by appellants, if the construction of the Oak Street building complied with the legal requirements, varied from no increase at all to the highest increase of 12.9 per cent. when tested from another point. The average increase, considering the twenty points tested, was about 2.14 per cent. They also testified that air currents would be increased in volume around appellants' property because of deflection of the currents by the large building.

Several reasons are advanced in favor of the decree, any one of which, if sustained, would necessitate an affirmance. The various grounds may be briefly stated thus: (a) absence of special damage suffered by appellants; (b) appellants' laches; (c) enforcement of zoning ordinance rests with municipal authorities, not with neighborhood lot owner; (d) finding that appellees acted in good faith is supported by evidence and is invulnerable to attack on appeal; (e) a court of equity will not grant an injunction when, on balancing equities, it is found that such relief will injure one party much more than it will aid the other.

The two serious objections to the granting of relief are those which question appellants' right to maintain this suit in the (alleged) absence of any showing of special damage and the impropriety of granting relief which will result in tremendous injury to appellees with only inconsequential benefit to appellants.

■ We are not seriously impressed by the argument that appellants have been guilty of laches or that the findings are not subject to successful attack. It may be seriously questioned whether good faith is a matter of fact or a conclusion. It is ordinarily a question of fact, it is true, and, assuming it is one in this case, the real controversy turns upon

what is meant by good faith. According to the decision of the Supreme Court of Illinois (344 Ill. 82, 176 N. E. 333), the building was constructed in defiance of Chicago's zoning ordinance. It was erected in the face of determined attack by appellants who voiced their protests before the Building Commissioner and persistently and continuously thereafter in court. It is impossible for a court or jury to correctly say that a building erected in the face of a city ordinance and in spite of litigation which sought to prevent its erection was nevertheless undertaken in good faith and so carried through. What the learned District Court meant to find was that individuals purchased stock in the company or bought its bonds without any actual knowledge of the illegal conduct of those who originated the enterprise and carried it through in the face of hostile litigation waged against the project in court and before the Building Commissioner. It is only on the theory that individual bondholders did not actually know that which was available to them had they investigated that it can be said they acted in good faith. As to the company and its officers, they acted knowingly, defiantly, and in reckless disregard of the warnings which the pending litigation effectively proclaimed.

When the application for a permit was rushed with much speed through the Building Commissioner's office, appellants protested. When their protests were overruled, they sought redress in court. In the face of this legal and other opposition those engaged in the stock and security part of the undertaking proceeded to finance the venture, promptly sold the bonds, and began the erection of the building. If there was unusual delay in the final disposition of the case brought by appellants, it was no more chargeable to the latter than to appellees. The decision of the Supreme Court, though postponed for some time, was decisive, and the rights of the parties were fixed with finality therein.

The promoters, however, had accomplished their object. The building was erected. Although erected in defiance of law, it was completed. More important to the promoters was the fact that they had sold the stock of the corporation and its bonds. Their profits had been secured, and the venture was ready for a court of bankruptcy or an equity court receivership. They defiantly and somewhat tauntingly asked their adversary, "What can you do about it?"

It was to the court of equity that the company promptly proceeded, and a receiver was appointed. It thus left the child of its iniquity in the lap of that court.

The bondholders ask that the consequences of the company's misdeeds be not visited on them, because of their asserted innocence and good faith. Even the stockholders, whose interests are apparently theoretical rather than real, also disclaimed moral and legal responsibility for the company's delinquency. The trustee named in the mortgage, though possessed of actual knowledge of appellants' challenge, professes to occupy a preferred position because of its asserted innocence and good faith.

Briefly stated, our conclusion is that we reject this claim of innocence and good faith to all claiming under the company which was guilty of affirmative misconduct. The trustee had actual as well as constructive notice. The stockholders are liable for the action of the officers and directors whom they selected. The bondholders, had they investigated, would have discovered the frailty of their mortgagor's rights.

The inevitable conclusion, therefore, is that none of appellees is in a position to assert that it occupies the position of innocent party or that it acted in good faith.

This conclusion does not prevent the bondholders from advancing their argument in favor "of balancing the equities" when it comes to a consideration of the propriety of granting injunctive relief.

There likewise can be no basis for charging appellants with laches other than that they did not apply for an injunction in addition to pursuing the other legal steps by them taken. Had an injunction been sought, a bond much larger than the value of the buildings, which appellants were seeking to protect, would have been required. We know of no decision and of no rule which holds an investor to be guilty of laches because he limits his legal actions to those proceedings which the contents of his purse prescribed. The important and determining fact is that appellants at all times protested and challenged the company's right to proceed with the construction of the building. They did more than protest verbally, they took their contest to court and pressed their suit until the Supreme Court of the state completely disposed of the litigation in their favor.

As a further bar to appellants' right to successfully maintain this suit, it is urged that no special damage was shown.

In disposing of this contention it is first

necessary to understand and define the term "special damage." As ordinarily understood, appellants suffered special damages. They owned a lot separated from the building called 40 East Oak Street only by an alley. Their light and air were affected and to their injury. The erection of a building twenty stories high, adjacent to residential property in a residential zone, we think may well, without other facts, create a presumption of special damages.

But appellees argue that the special damage to which they refer is more limited in its scope. It is restricted to a damage which is different from that suffered by others because of the violation of the building restrictions of the zoning ordinance. In other words, appellees argue that complainants' damage must be altogether different (not different merely in degree) from that suffered by others in the neighborhood through the erection of such a building in the violation of a zoning ordinance. Otherwise the damage is not special. Numerous authorities are collected which lend some support to this contention.[1] It is also argued, and some of the cases just cited are referred to as authority for the further proposition, that only the city may *maintain a suit* to enforce the zoning ordinance or prevent its violation.

However, the weight of authority and of reason, so it seems to us, supports the position that the damages shown in this case are special damages and permits appellants to maintain the suit.[2]

Among these decisions, it is to be noted are two Illinois decisions, Glos v. People, 259 Ill. 332, 102 N. E. 763, 766, Ann. Cas. 1914C, 119, and Michigan-Lake Building Corp. v. Hamilton, 340 Ill. 284, 172 N. E. 710, 713.

In Glos v. People, supra, the court said: "A person is prejudiced or aggrieved, in the legal sense, when a legal right is invaded by the act complained of or his pecuniary interest is directly affected by the decree or judgment."

In Michigan-Lake Building Corp. v. Hamilton, supra, the court said:

"* * * Appellees here are the owners of property located in the same neighborhood as the property of appellant, *but they are not permitted under the amendatory ordinance to construct, as appellant is, a building having a street line height of 440 feet.* In our opinion appellees were aggrieved parties within the meaning of the zoning statute, and were authorized, in accordance with its provisions, to question the validity of the building permit issued to appellant and to attack the validity of the amendatory ordinance by virtue of which the permit was issued. Ayer v. Cram [Commissioners on Height of Buildings in Boston] 242 Mass. 30, 136 N. E. 338."

Appellees distinguish these two cases in certain respects pointing out that a zoning ordinance might extend the meaning of the term "an aggrieved party" and yet not enlarge the defense of special damages. The case of Welton v. Hamilton, 344 Ill. 82, 176 N. E. 333, is not however capable of such distinction.

The case of Fitzgerald v. Merard Holding Co., 106 Conn. 407, 138 A. 483, 486, 54 A. L. R. 361, announces the rule which we follow. The court there said:

"* * * The primary duty of enforcing these regulations rested upon the zoning commission. The right to enforce them by injunction, where their violation had resulted, is now resulting, or will result in special damage to one's property, exists in the one injured, and is not dependent upon his having requested the public authorities in

1 Carstens v. City of Wood River, 344 Ill. 319, 176 N. E. 266; Joseph v. Wieland Dairy Co., 297 Ill. 574, 131 N. E. 94; Srager v. Mintz, 109 N. J. Eq. 544, 158 A. 471; Hamilton v. Semet Solvay Co., 227 Ill. 501, 81 N. E. 538; Continental Illinois Bank & Trust Company, Trustee, v. Standard Oil Co., 257 Ill. App. 425; Sheldon v. Weeks, 51 Ill. App. 314; O'Brien v. Turner, 255 Mass. 84, 150 N. E. 886; Whitridge v. Calestock, 100 Misc. 367, 165 N. Y. S. 640; Owid v. Moushaty, 125 Misc. 535, 211 N. Y. S. 478; Coley v. Campbell, 126 Misc. 869, 215 N. Y. S. 679; Keenly v. McCarty, 137 Misc. 524, 244 N. Y. S. 63; Dinkin v. Kip, 110 N. J. Eq. 486, 160 A. 676;. Perrin v. Mountain View Mausoleum Ass'n, 206 Cal. 669, 275

P. 787; Guest v. Reynolds, 68 Ill. 478, 18 Am. Rep. 570; Tinker v. Forbes, 136 Ill. 221, 26 N. E. 503.

2 Fitzgerald v. Merard Holding Co., 106 Conn. 475, 138 A. 483, 54 A. L. R. 361; Cordts v. Hutton Co., 146 Misc. 10, 262 N. Y. S. 539; Boehner v. Williams, 213 Iowa, 578, 239 N. W. 545; Stokes v. Jenkins, 107 N. J. Eq. 318, 152 A. 383; Dunne v. County of Rock Island, 283 Ill. 628, 119 N. E. 591; Cohen v. Rosedale Realty Co., 120 Misc. 416, 199 N. Y. S. 4; Pritz v. Messer, 112 Ohio St. 628, 149 N. E. 30; Holzbauer v. Ritter, 184 Wis. 35, 198 N. W. 852; Glos v. People, 259 Ill. 332, 102 N. E. 763, Ann. Cas. 1914C, 119; Michigan-Lake Building Corp. v. Hamilton, 340 Ill. 284, 172 N. E. 710.

charge to enforce the violation and their refusal or failure to perform their duty. If one suffers an injury special and peculiar to his property from an obstruction in a town common upon which his property fronts, he is entitled to maintain an injunction against the continuance of the encroachment without application to the proper authorities. * * * The erection of a structure, though it is not in itself a nuisance, becomes such when it is located in a place forbidden by law."

There can be no doubt but that appellants suffered a damage different from that suffered by the public. Their damage might well be called special, even though material financial loss was not involved.

In Cordts v. Hutton Co., 146 Misc. 10, 262 N. Y. S. 539, 543, the court said:

" * * * The plaintiffs bring this action upon the theory that their property is being injured, or subject to threat of being injured, by a violation of both zoning ordinances, and hence that they have an interest sufficient to maintain the action. This position is sound. It is obvious that further excavations within the prohibited area will diminish to some extent the value of the plaintiffs' property. Under such circumstances their interest is sufficient to maintain an action. Rice v. Van Vranken, 225 App. Div. 179, 232 N. Y. S. 506, affirmed 255 N. Y. 541, 175 N. E. 304."

In Cohen v. Rosedale Realty Co., 120 Misc. 416, 199 N. Y. S. 4 (see, also, Id., 206 App. Div. 681, 199 N. Y. S. 916; Id., 121 Misc. 618, 202 N. Y. S. 95; Id., 211 App. Div. 812, 206 N. Y. S. 893), the court held that the owner of a residential property suffered a special damage when a store building was erected in violation of a zoning ordinance near his property, etc.

Nor is there significance in appellants' failure to show substantial *financial* loss. One who owns or occupies a residential property has a legitimate grievance, remediable in equity, against another who builds a twenty story building next door, in violation of the zoning ordinance, which is not met by the latter's assurance to the former that he may take in roomers and boarders employed in said twenty story building and thereby increase the income from the said residential property. Nor is it an answer to the residence owner's complaint for the twenty story building owner to suggest that the former move to a more attractive climate. The enjoyment of one's property is necessarily and properly subject to certain limitations which the state or municipality, in the exercise of its police powers, may prescribe. The individual's enjoyment of his property is not restricted, however, by adjoining lot owners' attempted exercise of police powers, nor the assumption of, or exercise of, other powers which unlawfully impair or destroy the former's use of his property.

Whether a court should have granted injunctive relief under all the circumstances disclosed in this case presents the most sharply controverted and serious issue raised on this appeal. Appellees argue that the courts must balance the equities and grant only that relief which will compensate appellants and yet not vindictively punish appellees. In other words, the effect of the relief on appellees must be considered as well as the wishes of appellants.

With this position we are in full accord. We have had occasion to apply this doctrine in a recent case (City of Milwaukee v. Activated Sludge, Inc. (C. C. A.) 69 F.(2d) 577, decided March 2, 1934). The difficulty which we experience in the instant case is traceable to our inability to accept appellees' fact assumptions respecting equities. Equities cannot be balanced until understood and appraised. There is a vast difference between the act of a community in protecting the lives of those who pass over a bridge, for instance, or when protecting the health of a community by improving sanitary conditions and the equity of one (limited strictly to dollars) who deliberately violates a zoning ordinance which was enacted for the promotion or protection of the health and welfare of the community.

Pomeroy, in dealing with the subject of balancing conveniences where the wrongdoer deliberately erects the offending building with notice of the pendency of a suit or an appeal, puts it thus:

"They (the cases) all agree in one particular, however, viz., that the defendant who would claim its consideration in his favor must have committed the tort innocently; a willful wrong-doer is entitled to claim no favor. * * * It is hard to see how anyone can claim any immunity for a tort on the ground that it was innocently done, when at the time of doing it he knew his right to do it was disputed by the person affected." Pomeroy, Equity Jurisprudence, § 1966. See also, § 1922.

We cite and quote from some of the decisions which deal with this subject.

In Gulick v. Hamilton, 287 Ill. 367, 122 N. E. 537, 540, the court said:

"To maintain and protect the complainants' right to the alley will result in considerable expense to the defendant. He, however, had his election to first have his right determined, or to proceed with the construction of his building with the knowledge that he might be compelled to restore the alley. * * * There was no preliminary injunction, but the only office of that writ is to preserve the existing condition until a final hearing, and the complainants were at liberty to apply for such a writ or not, as they saw fit. When the defendant was notified not to obstruct the alley, he could have restored it at small expense. He had notice of the existence of the alley and the right of the complainants by his own chain of title, and was not entitled to any other notice not to invade that right. The defendant could not by completing his building deprive the court of the right to compel restoration of the status. * * * The duty of the courts is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of expense to the wrongdoer."

In Ives v. Edison, 124 Mich. 402, 83 N. W. 120, 121, 50 L. R. A. 134, 83 Am. St. Rep. 329 (Mich.); the court said:

"* * * After the decree was entered in the court below, the defendant treated the case as though it was finally adjudicated in his favor * * *.

"While the case was awaiting a final determination, the defendant saw fit to ignore the rights of the complainant, and to ignore the legal proceedings, and proceeded to remove the stairway and to substitute another in the place of it. To accomplish this wrong has cost the defendant a large sum of money. To restore the easement thus arbitrarily taken will cost another large sum of money, the aggregate of which sums is so large that it is now said it will be entirely disproportionate to the injury done the complainant, and for that reason the court should not grant relief. If such a contention is to prevail, then indeed is the chancery court shorn of its power to protect persons in their right of property. If this doctrine is to be sanctioned, the person engaged in large enterprises may seize upon rights of less magnitude than his own, and, if an appeal is made to the law for protection, he may ignore the right of the injured and the pendency of the legal proceeding; and if he will put money enough into the new enterprise before a final decree is entered, so that it will cost him much more to restore the right he has wrongfully taken than a jury may regard the right as worth, he may prevent the entering of any decree whatever against himself, and may mulct the person who has appealed to the courts to protect his rights, in costs. This does not appeal to our sense of justice. * * * All the work done in the removal of this stairway has been done since this proceeding was begun. The defendant preferred to act without waiting for the court to determine the controversy. In doing so he acted at his peril, and is justly chargeable with the consequences. He should be required to restore the easement as it existed when this bill was filed."

Other cases dealing specifically with the effect of pendency of proceedings upon existence of good faith in finishing offending structures are: Bainton v. Clark Equipment Co., 210 Mich. 602, 178 N. W. 51; Turney v. Shriver, 269 Ill. 164, 109 N. E. 708; Felsenthal v. Warring, 40 Cal. App. 119, 180 P. 67; Tex. & N. O. R. v. Northside Belt Ry., 276 U. S. 475, 48 S. Ct. 361, 72 L. Ed. 661; Hayes v. Hoffman, 192 Wis. 63, 211 N. W. 271; Bouchard v. Zetley, 196 Wis. 635, 220 N. W. 209; Armstrong v. Leverone, 105 Conn. 464, 136 A. 71; Howell v. Cooper, 33 Ohio App. 287, 168 N. E. 757; O'Brien v. Goodrich, 177 Mass. 32, 58 N. E. 151; Tucker v. Howard, 128 Mass. 361; Supplee v. Cohen, 80 N. J. Eq. 83, 83 A. 373; Todd v. North Ave. Holding Corp., 121 Misc. 301, 201 N. Y. S. 31; Stewart v. Finkelstone, 206 Mass. 28, 92 N. E. 37, 28 L. R. A. (N. S.) 634, 138 Am. St. Rep. 370.

Decisions wherein courts of equity have refused to balance equities and consider the comparatively great financial loss which would ensue to defendant upon the issuance of the mandatory injunction are: Gerstley v. Globe Wernicke Co., 340 Ill. 270, 172 N. E. 829; Del Giudice v. Shanley, 139 A. 311 (R. I.); Hartman v. Wells, 257 Ill. 167, 100 N. E. 500, Ann. Cas. 1914A, 901; Baldocchi v. Four Fifty Sutter Corp., 129 Cal. App. 383, 18 P.(2d) 682; Curtis Mfg. Co. v. Spencer Wire Co., 203 Mass. 448, 89 N. E. 534, 133 Am. St. Rep. 307; Pradelt v. Lewis, 297 Ill. 374, 130 N. E. 785, 14 A. L. R. 828. See, also, Lynch v. Union Inst. for Savings, 159 Mass. 306, 34 N. E. 364, 20 L. R. A. 842; Hard v. Blue Points Co., 170 App. Div. 524, 156 N. Y. S. 465; Mobile & O. R. Co. v. Zimmern, 206 Ala. 37, 89 So. 475, 16 A. L. R. 1352.

We have earnestly endeavored to place ourselves in a position to fully appreciate appellees' argument to the effect that enforcement of a right which arises out of an effort

to give light and air to metropolitan areas is an equity that is outweighed by the dollars advanced by builders of twenty story buildings in defiance of zoning ordinances. We have also endeavored to obtain appellees' viewpoint when they propose a money judgment to one who suffers small financial loss as satisfaction for violation of important ordinances enacted for the benefit of the public. In the fight for better living conditions in large cities, in the contest for more light and air, more health and comfort—the scales are not well balanced if dividends to the individuals outweigh health and happiness to the community. Financial relief to appellants is not the only factor in weighing equities. There is involved that immeasurable but nevertheless vital element of respect for, and compliance with, the health ordinance of the city. The surest way to stop the erection of high buildings in defiance of zoning ordinances is to remove all possibility of gain to those who build illegally. Prevention will never be accomplished by compromise after the building is erected, or through payment of a small money judgment to some individual whose financial loss is an inconsequential item.

The decree is reversed with directions to grant a mandatory injunction in accordance with the views herein expressed.